**W.C.W., Appellant,**

**v.**

**Esther BIRD and Kenneth Wetcher M.D., P.A. & Associates, Appellees.**

**No. 01–91–00070–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1992.

Rehearing Denied Oct. 29, 1992.

Steven J. Houston, JoAnn Storey, Houston, for appellant.

Robert T. Saunders, Alice Giessel, Alvin Laser, Linda J. Cole, Claude Masters, Houston, for appellees.

Before O'CONNOR, SAM BASS and MIRABAL, JJ.

## OPINION

O'CONNOR, Justice.

The question presented by this appeal is whether a parent has a cause of action against a psychologist for negligent misdiagnosis of sexual abuse by the parent.

This is an appeal from a take-nothing summary judgment granted in favor of the defendants, Esther Bird (Bird) and Kenneth Wetcher, M.D., P.A. & Associates (Wetcher), in a suit in which the plaintiff, W.C.W. (the father), alleged that he was injured by Bird's conclusion his son's unusual behavior was caused by the father's sexual abuse of the son. We reverse and remand.

The father's petition alleges the following: In a divorce proceeding in 1983, the court appointed the father managing conservator of the son, Jarrad. In January 1986, the father moved to Florida seeking employment and left his son in the care of his former mother-in-law. Later, the son moved in with his mother and her common-law husband. In June 1986, plans were made to have the son join the father in Florida. On June 5, the mother contacted child protective services and also filed a criminal complaint. On June 6, the mother sought psychological counseling for the son from Bird, who was an associate employed by the defendant Kenneth Wetcher, M.D., P.A. & Associates. The mother claimed that the son had reported several instances when "daddy" sexually abused him. Bird interviewed the son, the mother, and the husband, and did some testing. Bird then directed them back to child protective services. On June 12, in response to a request from the mother's lawyer, Bird executed an

affidavit that contained Bird's conclusion that the father had sexually abused the son. The affidavit was filed with the district court in which the mother's petition to modify the child's custody was pending. On June 19, an officer in the juvenile sex crimes division of the Houston Police Department contacted Bird by telephone and discussed Bird's conclusion that the father had sexually abused the son. Based on this conversation, the officer filed charges against the father for sexual assault of a child.

The summary judgment evidence showed: This was the first child sexual abuse case Bird had ever handled. Bird spent 10 minutes with Jarrad; she did not ask him any specific questions and did not test him. Bird interviewed Jarrad's mother and her common-law husband for 30 to 40 minutes and gave them a part of a psychological test. After her conversations with the family, she only *suspected* sexual abuse by a person called "daddy." She did not know if "daddy" meant the father or the mother's common-law husband. Bird testified in deposition that she did not remember if she did any further investigation on the case before executing the affidavit. A week later, without having seen the child again, she stated in the affidavit that

> I have *concluded* that Jarrad has been the victim of sexual abuse by his father [W.C.W.]. . . .
> It is my opinion that Jarrad's erratic, violent and inconsistent behavior as well as his outbursts of anger are a direct reaction to the trauma he experienced because of *repeated* events of sexual abuse by this father, [W.C.W.].

(Emphasis added.)

The summary judgment evidence also showed: In July 1986, Dr. Flake was requested by the 247th Family District Court to independently evaluate the case of W.C.W.'s son. Based on all the testing and interviewing she conducted, it was her opinion that W.C.W. had not sexually abused his 6–year–old son. She testified that

> In all of the testing and interviewing of the child you try to communicate with

him and observe their reactions. You spend several hours on several different occasions with the child. A minimum would be 3 to 4 hours. It would be real risky if the psychological associate only conducted a 10 minute interview with a child, asked the child no questions and gave no test to the child.

The father alleged that Bird's negligence caused the charges of sexual abuse to be filed and that she failed to properly investigate the allegations of sexual abuse; that Wetcher was negligent in hiring and supervising Bird, managing the clinic, and evaluating allegations of the sexual abuse of children; and that the defendants were grossly negligent. The father sought damages for past and future mental anguish, loss of earnings, and for expenses incurred in the family and criminal district courts.

On May 11, 1990, Bird filed a motion for summary judgment. She contended that there were no genuine issues of material fact and that she was entitled to judgment as a matter of law because (1) Bird's statements in the affidavit were privileged because they were made in the course of judicial proceedings; and (2) she owed no duty to the father. The motion was supported by neither an affidavit nor summary judgment evidence. The father filed a response arguing that the privilege was not a defense to a cause of action based on negligent misdiagnosis and Bird owed him a duty. The trial court granted Bird's motion for summary judgment without stating the reason for its ruling. Later, when Wetcher filed a motion for summary judgment alleging the same grounds as Bird's motion and the doctrine of respondeat superior, the trial court granted it and entered a final judgment that the father take nothing.

In one point of error the father asserts that the trial court erred in granting the defendants' motions for summary judgment.

### Pleadings of privilege

The father contends the court erred in granting the summary judgment on the ground that the communication was privi-

leged. The father argues that the trial court erred in rendering a summary judgment because the defendants did not plead the affirmative defense of privilege.

■ Privilege is an affirmative defense in the nature of a confession and avoidance. *See Denton Publishing Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex.1970) (newspaper privilege asserted in a suit for libel); *Bradbury v. Scott*, 788 S.W.2d 31, 37 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (opinion-of-the-writer privilege asserted in a suit for libel). To rely on an affirmative defense, the defendant must plead it. TEX.R.CIV.P. 94; *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991) (affirmative defense of lack of consideration). Here, the defendants did not plead privilege as an affirmative defense.

■ An unpleaded affirmative defense may serve as the ground for summary judgment if it was raised in the motion for summary judgment and the opposing party did not object. *Id.* In their motions for summary judgment, the defendants asserted the affirmative defense of privilege. The father did not object to the defendants' lack of pleading of privilege. Accordingly, the father may not raise the lack of pleading as an issue on appeal. See *Id.*

### Immunity under the Family Code

At oral argument, the defendants argued that they are entitled to the immunity granted by the Family Code to persons who report child abuse. Section 34.03 of the Family Code provides:

(a) Except as provided by Subsection (b) of this section a person reporting or assisting in the investigation of a report pursuant to this chapter is immune from liability, civil or criminal, that might otherwise be incurred or imposed. Immunity extends to participation in any judicial proceeding resulting from the report.

(b) Persons who report their own conduct or who otherwise report in bad faith or malice, or assist in the investigation of a report in bad faith or malice, are not protected by this section.

TEX.FAM.CODE ANN. § 34.03 (Vernon Supp. 1992). The reporting scheme in chapter 34 of the Family Code contemplates that a person who believes a child is being harmed must make a *nonaccusatory* report of the abuse to a local or state law enforcement agency, the Texas Department of Human Services, the state agency that operates the facility in which the abuse occurs, or the agency designated by the court to be responsible for the protection of the child. TEX.FAM.CODE ANN. § 34.02 (Vernon Supp.1992).

In response, the father noted at oral argument that the defendants did not contend they were immune under section 34.03 in their pleadings or in their motions for summary judgment. We have not been able to find any reference in any of the defendants' pleadings to immunity extended to persons reporting child abuse.

■ An appellate court may not affirm a summary judgment on a ground not specifically stated in the motion for summary judgment and not included in the pleadings. *Travis v. City of Mesquite*, 830 S.W.2d 94, 99 (1992) (court could not affirm on common-law immunity which was not included in the motion for summary judgment or the pleadings). We reject the defendants' late claim to immunity under section 34.03.

### Privilege as a defense to negligence

■ The father concedes that communications made in the course of a judicial proceeding cannot serve as the ground for an action for libel, regardless of the negligence or malice with which they are made. *See James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982). The father also concedes that this privilege covers statements made by the judge, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings including statements made in open court, pretrial hearings, depositions, affidavits and any of the pleadings or other papers in the case. *See Id.* at 916–17.

■ The father contends, however, that the privilege defense applies only to libel and slander cases and does not preclude a cause of action based on negligence. Recall that the father's suit against Bird is

based on negligence; it is not a suit for libel or slander. The father's cause of action is based on Bird's negligent misdiagnosis and surrounding events, such as the communication of the misdiagnosis to the child's mother and a law enforcement officer and the action taken by both on the misdiagnosis.

The supreme court addressed a similar situation in *James*. There, after Mrs. James was hospitalized for observation under the Texas Mental Health Code, three psychiatrists diagnosed her as mentally ill, and filed reports with the probate court that she required confinement. *Id.* at 916. One of the psychiatrists wrote a letter to Mrs. James' children's attorney, who was preparing an application for temporary guardianship of the father and her estate, in which he stated that she "was not of sound mind and not competent to manage her financial affairs." *Id.* Mrs. James was released after obtaining a writ of habeas corpus, and the children dismissed all proceedings against her. *Id.* at 916.

Mrs. James sued the psychiatrists alleging libel, negligent misdiagnosis, medical malpractice, false imprisonment, and malicious prosecution. *Id.* The trial court granted summary judgment against her, which the court of appeals affirmed, holding that the publication of the psychiatrists' opinions in the mental health and guardianship proceedings was privileged. *Id.* The supreme court agreed with the court of appeals as to the defamation cause of action, and held that the summary judgment was properly rendered on that cause of action because the report filed with the probate court was privileged. *Id.* at 917. The court went on to say:

> The unavailability of a defamation action does not preclude a plaintiff from pursuing other remedies at law. [Citations omitted.] Mrs. James is not prevented from recovering from the doctors for negligent misdiagnosis-medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings.

*Id.* at 917–918.

Similarly, in the case before this Court, the affidavit filed with the district court in the custody suit will not support a cause of action for defamation. Here, as in *James*, the privilege does not preclude a suit for negligence.

The major distinction between *James* and the case before us is that in *James*, the plaintiff was the patient (*Id.* at 916); here, the plaintiff was not the patient, merely the father of the patient. This raises a question, not of privilege, but of the duty Bird owes the father.

### No duty to the father

The father contends that the trial court erred in granting the summary judgment because Bird did not owe the father a duty. The sole reason alleged in the defendants' motions for summary judgment on this issue was that they owed no duty to one outside of the psychologist-patient relationship. The defendants based this argument on cases that hold that a physician owes no duty to anyone outside the physician-patient relationship.

■■■ A defendant who moves for summary judgment on the plaintiff's cause of action must show that no genuine issue of material fact exists and that the defendant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). If the defendant can prove that the plaintiff has no cause of action because the law does not recognize one, the defendant is entitled to summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) (the defendant proved that the plaintiff had no cause of action under the Water Code for polluting waters that were outside the plaintiff's jurisdiction).

■■■ The defendants' motions for summary judgment are not supported by affidavits, depositions or other summary judgment evidence; therefore, we treat them as directed solely to the allegations in the father's petition. *See Gooden v. Tips*, 651 S.W.2d 364, 365 (Tex.App.—Tyler 1983, no writ). In reviewing the granting of the summary judgment in favor of the defendants, we must take as true every allega-

tion in the father's fourth amended original petition. *Id.* If the father's pleadings, when liberally construed, shows the existence of a genuine issue of material fact, the summary judgment was improperly rendered. *Id.*

To establish liability for negligence, a plaintiff must prove the existence and violation of a duty owed to him by the defendant. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987) (tavern owner was responsible to persons injured in car accident by drunk customer); *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983) (employer was responsible to persons injured when employer sent drunk employee home in middle of shift). Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others. *El Chico,* 732 S.W.2d at 315. Factors the courts consider in determining whether a duty exists are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the defendant. *Otis Engineering,* 668 S.W.2d at 309. Among these factors, the courts have traditionally considered foreseeability the most significant. *Mitchell v. Missouri–K–T Ry. Co.,* 786 S.W.2d 659, 662 (Tex.1990); *El Chico,* 732 S.W.2d at 311; *C & H Nationwide, Inc. v. Thompson,* 810 S.W.2d 259, 266 (Tex.App.—Houston [1st Dist.] 1991, writ requested).

Foreseeability does not require the actor to anticipate the particular incident; it only requires that he reasonably anticipate the general character of the injury. *Gutierrez v. Scripps–Howard,* 823 S.W.2d 696, 699 (Tex.App.—El Paso 1992, writ requested). *In all negligence cases,* the foreseeable harm of some course of conduct or method of operation is the underlying basis for liability. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex. 1983).

The existence of a duty is a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Mitchell,* 786 S.W.2d at 662. In some cases, however, the existence of a duty may only be determined by the fact finder's resolution of disputed facts or inferences. *Id.* The existence of duty is a question of law when all of the essential facts are undisputed, but when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury. A particularly appropriate case for such a rule is one as here, where the risk reasonably to be perceived defines the duty to be obeyed; i.e., where knowledge and foreseeability are important elements of duty.

*Id.* (quoting *Bennett v. Span Indus., Inc.,* 628 S.W.2d 470, 474 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.)).

The defendants' theory that a physician owes no duty to anyone outside of the physician-client relationship was expressly rejected in *Gooden,* 651 S.W.2d at 369 (cited with approval in *El Chico,* 732 S.W.2d at 312). In *Gooden,* a physician did not warn his patient that the prescription medication would impair her ability to drive and the patient was involved in an automobile accident that injured the plaintiff. 651 S.W.2d at 365. The plaintiff sued the physician, who claimed he owed no duty of care to the plaintiff, absent a physician-patient relationship with the plaintiff. *Id.* The court of appeals reversed the trial court's summary judgment in favor of the physician and concluded that "under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." *Id.* at 369. The court held the plaintiff's injury was a reasonably foreseeable consequence of the doctor's failure to warn his patient not to drive. *Id.*

In the case before this Court, the situation is similar. The father alleged Bird was negligent in the diagnosis of his son's case, and such negligence is alleged to have injured him. The harm to a parent arising from a misdiagnosis that his or her child has been sexually abused by that parent is foreseeable. The attempted ter-

mination of the parent's custody rights and the institution of criminal proceedings are reasonably foreseeable consequences of such a diagnosis. Further, in his response to the motion for summary judgment, the father cited the deposition testimony of Wetcher where he stated that such a diagnosis can cause the accused parent emotional trauma, the loss of relationships, and problems with the parent's employment. We hold that the petition alleges a duty and that genuine issues of material fact concerning the breach of the duty exist.

At oral argument, the defendants cited two recent cases that have dealt with this issue, the duty of a mental health professional who examines a child to the child's parent. In *Vineyard v. Kraft*, 828 S.W.2d 248 (Tex.App.—Houston [14th Dist.], 1992, n.w.h.) a summary judgment case, the Fourteenth Court of Appeals held that a mental health professional, who evaluated a child for sexual abuse, had no legal duty to the nonparticipating parent. In *Vineyard*, as here, the parent accused of sexually abusing the child filed suit against the mental health professional. At 249. In *Vineyard*, the mental health professional made a report pursuant chapter 34 of the Family Code once he suspected child abuse (*Id.* at 254); here, it is uncontroverted that Bird did not make any report in compliance with chapter 34. In *Vineyard*, the mental health professional was appointed by the court to evaluate the child (*Id.*); here, the mental health professional was hired by the mother.

In *Vineyard* as here, the mental health professional filed a motion for summary judgment alleging (1) privilege and (2) no duty. *Id.* at 251.[1] The Fourteenth Court stated the issue as:

> [T]he serious question on this appeal is whether a legal duty arises between a nonparticipating parent and a mental health professional who makes an evaluation of a child's condition when the participating parent requests the evaluation

because he or she suspects child abuse by the other parent.

*Id.* at 252.

The Fourteenth Court assumed that the doctor owes a duty to the participating parent, but not to the nonparticipating parent. The court cites no authority for this distinction—that a doctor owes a duty to the parent who brings the child to the office or pays the bill, but not to the other parent. If the doctor owes a duty to either parent, it is difficult to understand how it can be limited to the parent who physically brought the child to the office or paid the bill. In *Vineyard*, the court relied on an earlier opinion from the El Paso Court of Appeals, *Dominguez v. Kelly*, 786 S.W.2d 749 (Tex.App.—El Paso 1990, writ denied).

In *Dominguez*, the El Paso Court of Appeals held that a doctor had no duty to the plaintiff in a civil suit for negligent misdiagnosis of sexual abuse of a child. *Id.* at 751. The *Dominguez* decision did not identify the plaintiff by his relationship to the abused child, and thus does not aid in the understanding of the duty of a doctor who treats a child to either or both of the parents. In *Dominguez*, the doctor examined the child at the request of the Department of Human Services and he filed his report according to chapter 34 of the Family Code. *Id.* at 750. Because the doctor complied with chapter 34, on that ground alone, he was entitled to immunity. Thus, the finding of "no duty" was dicta.

We sustain the father's point of error, reverse the judgment, and remand the case to the trial court.

---

1. In *Vineyard*, the father did not contest that the mental health professional's communications in the judicial setting were privileged. at 251–52. In *Vineyard*, the father merely argued that the statements outside of the judicial setting were not privileged. *Id.* at 251–52. Here, the father contends that the statements in the judicial setting did not preclude a suit for negligence, merely defamation.