kanetzky gps 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 





NO. 3-93-052-CV





BILLY WAYNE KANETZKY, INDIVIDUALLY AND BILLY WAYNE KANETZKY,


AS NEXT FRIEND FOR BILLY WAYNE KANETZKY, JR., AND TONI KANETZKY,



 APPELLANTS


vs.





HYDE PARK BAPTIST CHURCH, TWIG HOBBY,


LOIS GAMBLE, GAIL KENDRICK AND CONNIE BENFIELD,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 91-16830, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 





 We withdraw our opinion of August 11, 1993 and substitute the following therefor. 


 Billy Wayne Kanetzky sued Hyde Park Baptist Church ("Hyde Park") and two of
its employees, Twig Hobby and Lois Gamble, and psychologists, Gail Kendrick and Connie
Benfield, for interfering with his relationships with his two youngest children; for conspiring to
interfere with those relationships; and for causing Kanetzky serious emotional injury. Kanetzky's
new wife, Toni Kanetzky, and Kanetzky, as next friend for his son Billy Kanetzky, Jr., also sued
Hyde Park, Hobby, Gamble, Kendrick, and Benfield for causing each of them serious emotional
injury. The district court rendered a take-nothing summary judgment in favor of all of the defendants. We will reverse the summary judgment as to Kanetzky and affirm the
summary judgment as to Toni Kanetzky and Billy Kanetzky, Jr.



BACKGROUND



 Kanetzky and Mary Murphy were divorced in February 1989. Mary Murphy was
named managing conservator of the couple's two young children. Kanetzky and the maternal
grandparents, Lois and Cole Murphy ("the grandparents"), were named possessory conservators. (1) 


 In March 1989, the children began attending the Hyde Park Baptist Child
Development Center, a day-care facility operated by Hyde Park. Lois Murphy, was employed
at the day-care center. In September, the younger child's teachers, Hobby and Gamble (the
"teachers"), noticed that the child, a female, was displaying unusual behavior. 

 The teachers began documenting the child's incidents of aberrant behavior, yet said
nothing to either parent. Kanetzky regularly dropped off and picked up the children at the day-care center. When he asked how the children were doing, he was told only that both were "doing
fine." The day-care employees neither told Kanetzky of the aberrant behavior nor showed him
any documentation of the behavioral incidents. (2) 

 Several months after the day-care employees first noted the unusual behavior, Mary
Murphy was contacted. She was advised by the younger child's teacher that the child should see
a psychologist. The child was examined by Drs. Kendrick and Benfield (the "psychologists"),
who concluded that there were strong indications of sexual abuse. On the advice of the
psychologists, the suspicions of sexual abuse were reported to the Texas Department of Human
Services ("DHS").

 Almost immediately, the grandparents filed a motion to terminate Kanetzky's access
to the children and obtained a temporary restraining order limiting Kanetzky's access to the
children. At the hearing on the temporary order, the court appointed a clinical psychologist to
perform comprehensive psychological testing upon Kanetzky, Toni Kanetzky, and Billy Kanetzky,
Jr. (3) Therapy sessions with the youngest child and the psychological testing upon Billy Kanetzky,
Jr. indicated some likelihood that Billy Kanetzky, Jr. had sexually abused the youngest child.

 The district court referred the matter to a Master for investigation. The
psychologists testified as to their diagnoses. The Master ultimately concluded that the child had
been sexually abused. Kanetzky, Mary Murphy, and the grandparents agreed to a series of
temporary orders that gave Kanetzky conditional access to the children. In October 1991, the
court rendered a final order modifying the divorce decree's custody provisions. (4) 

 Shortly thereafter, Kanetzky filed suit against the grandparents, Hyde Park and its
day-care facility, the teachers, and the psychologists. Kanetzky alleged that all named defendants
interfered with his relationships with his two children, conspired to interfere with his relationships
with his children, and caused him serious emotional injury. Toni Kanetzky and Kanetzky, as next
friend for Billy Kanetzky, Jr., alleged that they also suffered serious emotional injuries. 

 All named defendants filed motions for summary judgment. The district court
severed the claims against the grandparents from the claims against Hyde Park, the teachers, and
the psychologists. (5) A take-nothing summary judgment was rendered in favor of all defendants. 
 The Kanetzkys appeal from the summary judgment in favor of Hyde Park, the
teachers, and the psychologists. We will reverse the summary judgment as to Kanetzky and
affirm the summary judgment against Toni Kanetzky and Billy Kanetzky, Jr.

DISCUSSION



 We are presented here with a complex set of disputed facts involving multiple
defendants, yet the district court chose to dispose of this case on summary judgment. Summary
judgment is a harsh remedy, proper only when the summary-judgment proof establishes as a
matter of law that there is no genuine fact issue as to one or more of the essential elements of the
plaintiff's cause of action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). 
The standards for reviewing a motion for summary judgment are well established: (1) The
movants for summary judgment have the burden of showing that no genuine issue of material fact
exists and that they are entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Hyde Park, the teachers, and the psychologists filed separate
motions for summary judgment. Because the relevant legal duties and fact issues differ for the
various appellees and appellants, we consider the claims on appeal separately.



1.  Kanetzky's Claims


    a.  Hyde Park Baptist Church and the Teachers


 In his first point of error, Kanetzky asserts that summary judgment was improper
because he pled viable causes of action and disputed fact issues as to those causes of action
precluded summary judgment in favor of Hyde Park and the teachers. We agree. The actions of
the teachers created an affirmative duty to Kanetzky; genuine issues of material fact as to whether
that duty was breached and whether their actions proximately caused Kanetzky's claimed injuries
preclude summary judgment in favor of Hyde Park and the teachers.

 We are not faced with the general question of what duty day-care centers owe to
the parents of the children for whom they care; rather, the issue presented here is whether a day-care center assumes an affirmative duty to a parent when an employee of the day-care center, upon
inquiry by the parent, conceals important information about the child from the parent. "One who
voluntarily enters an affirmative course of action affecting the interests of another is regarded as
assuming a duty to act and must do so with reasonable care." Otis Eng'g Corp. v. Clark, 668
S.W.2d 307, 309 (Tex. 1983). The teachers were responsible for the care of Kanetzky's youngest
child. Over a period of several months, upon dropping off or picking up his children, Kanetzky
regularly inquired as to how the children were doing. The teachers repeatedly told Kanetzky that
his youngest child was "doing fine." The written reports of the child's unusual behavior indicated
that the teachers thought that the child was far from "doing fine." (6) Once the teachers took it upon
themselves to decline to share their observations with Kanetzky, they began an affirmative course
of action affecting Kanetzky's interests, assumed a duty to act, and were required to do so with
reasonable care.

 The disparity between the teachers' written notations regarding the youngest child's
behavior and the teachers' answers to Kanetzky's repeated inquiries raises material fact issues. 
Viewed in the light most favorable to the summary-judgment nonmovant, the summary-judgment
evidence is capable of supporting Kanetzky's allegation that the teachers conspired with the
grandparents to interfere with Kanetzky's parent-child relationships. Accordingly, we sustain
Kanetzky's first point of error as to Hyde Park and the teachers.

 Kanetzky's second point of error disputes the trial court's holding that the immunity
provisions of the Texas Family Code shield Hyde Park and the teachers from liability. Section
34.01 of the Family Code creates a statutory duty to report suspicions of child abuse; section
34.03 provides in part that "[a]ny person reporting pursuant to this chapter is immune from
liability, civil or criminal, that might otherwise be incurred or imposed." Tex. Fam. Code Ann.
§§ 34.01, 34.03 (West Supp. 1993) (emphasis added). Immunity is an affirmative defense; a
summary-judgment movant bears the burden of proving all the essential elements of the
affirmative defense as a matter of law, leaving no issues of material fact. Montgomery v.
Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984). Hyde Park and the teachers here attempt to
invoke the protection of chapter 34 immunity without having proved (1) that they reported any
abuse and (2) that they did so pursuant to the Family Code's specific provisions.


 Chapter 34 of the Family Code imposes a mandatory duty upon day-care employees
to report suspicions of child abuse to DHS within forty-eight hours:



An oral report shall be made immediately on learning of the abuse or neglect, or
likelihood of abuse or neglect. . . . If a professional has cause to believe that a
child has been or may be abused or neglected, the professional shall make an oral
report . . . not later than the 48th hour after the hour the professional first suspects
that the child has been or may be abused or neglected. . . . [A] written report shall
be made within five days to the same agency . . . "[P]rofessional" means an
individual who is licensed[ (7)] or certified by the state, or who is an employee of a
facility licensed . . . by the state . . . includ[ing] day-care employees.



Tex. Fam. Code Ann. § 34.02 (West Supp. 1993) (emphasis added). A note included in the
younger child's behavior file indicates that Gamble reported to her supervisor at Hyde Park that
she suspected sexual abuse as early as November 13, 1989. Despite the mandatory duty to report,
the record indicates no report made to DHS before Mary Murphy made one, upon advice of the
psychologists, in March 1990. In that this failure to report supports Kanetzky's contention that
Hyde Park's day-care facility and the teachers were conspiring to interfere with his parent-child
relationships, the failure to report creates a fact issue rather than a cloak of immunity. (8) 
Accordingly, Kanetzky's second point of error is sustained.



 b.  The Psychologists


 Kanetzky's fifth point of error relates to the viability of his cause of action against
the psychologists; Kanetzky contends that the district court erroneously rendered summary
judgment for the psychologists based upon its conclusion that the psychologists owed Kanetzky
no duty.


 We recognize that a psychologist generally owes a duty to the patient when there
is a doctor-patient relationship. (9) However, a psychologist's duty also may extend to third persons. 
See e.g., W.C.W. v. Bird, 840 S.W.2d 50, 55-56 (Tex. App.--Houston [1st Dist.] 1992, writ
granted) (duty extended to parent of minor child). Mental-health professionals are governed by
the same rules of duty as are physicians. James v. Brown, 637 S.W.2d 914, 918 (Tex. 1982). 
A physician owes a duty to third persons when the physician's negligence in diagnosis or
treatment of a patient contributes to a non-patient's injuries. Gooden v. Tips, 651 S.W.2d 364,
369 (Tex. App.--Tyler 1983, no writ) (cited with approval in El Chico v. Poole, 732 S.W.2d 306,
312 (Tex. 1987)).

 The district court, in granting summary judgment for the psychologists, has too
narrowly framed the scope of the psychologists' duty within the confines of the physician-patient
relationship. This court has held that the law imposes upon all persons, physicians not excepted,
a duty to act as a reasonably prudent person would act under the same or similar circumstances,
considering any reasonably foreseeable risk or probability of injury to others. Pope v. St. John,
No. 3-93-016-CV, slip op. at 3 (Tex. App.--Austin August 11, 1993, no writ h.). The Supreme
Court has recognized that "[o]ne who voluntarily enters an affirmative course of action affecting
the interests of another is regarded as assuming a duty to act and must do so with reasonable
care." Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983). Thus, it is clear that under
certain circumstances, irrespective of the existence of a physician-patient relationship, a doctor
may owe a duty to a person to exercise reasonable care. This is especially true in situations where
a physician takes an affirmative course of action.

 Kanetzky argues that the psychologists owed him a duty to not misdiagnose his
child, citing as his strongest authority W.C.W. v. Bird, 840 S.W.2d 50 (Tex. App.--Houston [1st
Dist.] 1992, writ granted). We note that writ has been granted in this case. Without deciding
whether the facts of Kanetzky's case create a duty to exercise reasonable care, we hold that the
psychologists' summary judgment must be reversed because of the existence of factual
controversies under Kanetzky's conspiracy theory.

 To be entitled to summary judgment, appellees had the burden to establish that
there existed no genuine issues of material fact thereby entitling them to judgment as a matter of
law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991) (citing City of Houston v.
Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979)). The psychologists have failed
to carry this burden of proof and are not entitled to judgment as a matter of law.

 Kanetzky's cause of action is grounded in his belief that the psychologists conspired
with the other defendants to interfere with his parent-child relationship. Suspicions of child abuse
or neglect must be reported within forty-eight hours after a professional first suspects that the
child has been or may be abused or neglected. Tex. Fam. Code Ann. § 34.02 (West Supp. 1993). 
There is no evidence in the record which indicates the specific time and date that the psychologists
first suspected sexual abuse or the specific time and date that the suspicions were actually reported
to the Department of Human Services. Kanetzky alleges that the psychologists delayed making
their diagnoses and failed to timely notify the proper authorities of the suspected child sexual
abuse in order to facilitate the Murphys' attempts to terminate his possessory conservatorship. 
Since there is no evidence that the psychologists complied with their statutory duty, there remains
a question of fact as to whether the psychologists delayed making their diagnosis or report to the
Department of Human Services so as to conspire with the other defendants to terminate
Kanetzky's parental rights.

 Whether the psychologists colluded with any of the other defendants and acted in
bad faith or unreasonably are questions for a fact-finder that cannot be disposed of on summary
judgment. Accordingly, Kanetzky's fifth point of error is sustained. 



   c.  Remaining Points of Error

 In his third point of error, Kanetzky contends that the trial court erred in holding
that he failed to state a valid claim for emotional-distress damages. The determination of mental
anguish should be determined after the facts have been developed; the question of whether
emotional-distress damages are demonstrated is one for the fact-finder and should not be resolved
by summary judgment when disputed fact issues exist as to the other elements of a plaintiff's cause
of action. Minyard Food Stores v. Newman, 612 S.W.2d 198, 199 (Tex. 1980). As is true of the
other elements of Kanetzky's cause of action, we find that the existence of disputed fact issues
precludes summary judgment. Kanetzky's third point of error is sustained. 

 Kanetzky's fourth point of error urges that the trial court erred in holding that his
claims were barred by privilege or collateral estoppel. We resolved this issue when we addressed
Kanetzky's second point of error. As with Hyde Park and the teachers, Kanetzky's complaint
addresses the psychologists' actions in the months preceding the custody modification
proceedings, actions which created a claim that has not yet been adjudicated. Accordingly,
privilege and collateral estoppel do not apply and were improper grounds upon which to base a
summary judgment in this case. Kanetzky's fourth point of error is sustained.

 The trial court also erred in holding that Kanetzky failed to give notice to Hyde
Park, the teachers, and the psychologists pursuant to section 36.07 of the Family Code. The plain
language of the statute makes clear that chapter 36 governs actions involving interference with
custody. Tex. Fam. Code Ann. §§ 36.01-36.08 (West Supp. 1993). This section of the Family
Code is intended to facilitate the return of a child to a person who has been denied his or her
possessory interest by requiring service of notice upon the person who has violated a custody
order. Smith v. Smith, 720 S.W.2d 586, 598 (Tex. App.--Houston [1st Dist.] 1986, no writ). The
chapter's provisions are appropriately invoked when a parent has been denied custody by reason
of a child's abduction. See, e.g., Weirich v. Weirich, 833 S.W.2d 942 (Tex. 1992). As this is
not a suit affecting parental rights under chapter 36 of the Family Code, Kanetzky's sixth point
of error is sustained.




2.  Remaining Appellants' Claims


 Toni Kanetzky and Billy Kanetzky, Jr. each assert independent causes of action
against Hyde Park, the teachers, and the psychologists for negligent and intentional infliction of
emotional distress. Toni Kanetzky and Billy Kanetzky, Jr. allege that all of the defendants caused
each of them, individually, serious emotional injury. 

 Based upon the Texas Supreme Court's recent decision in Boyles v. Kerr, 855
S.W.2d 593 (Tex. 1993), we regard the trial court's summary judgment against Toni Kanetzky
and Billy Kanetzky, Jr. to be correct. First, Boyles v. Kerr abolished any cause of action for
negligent infliction of emotional distress. Id. at 594. Second, even for intentional infliction of
emotional distress, Toni Kanetzky and Billy Kanetzky, Jr. were still required to establish the
existence of an affirmative duty owed to them by the various defendants. "A claimant may
recover mental-anguish damages only in connection with defendant's breach of some other legal
duty." Id. (emphasis added). Neither Toni Kanetzky nor Billy Kanetzky, Jr. have established any
affirmative duty owed them by the church, its employees, or the psychologists. Thus, all points
of error are overruled with regard to Toni Kanetzky and Billy Kanetzky, Jr.



CONCLUSION



 Finding genuine issues of material fact, we hold that summary judgment as to
Kanetzky was erroneous. We therefore reverse that part of the trial court's summary judgment
ordering that Kanetzky take nothing and remand the portion the cause involving Kanetzky's claims
against Hyde Park, the teachers, and the psychologists. Having determined that the trial court was
correct in determining that the defendants owed no duty to Toni Kanetzky and Billy Kanetzky, Jr.,
we affirm the take-nothing summary judgment as to appellants Toni Kanetzky and Billy Kanetzky,
Jr.




 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded in Part and Affirmed in Part

Filed: October 20, 1993

Do Not Publish
1.   Mary Murphy and the two children had been living with the grandparents for some time
prior to the divorce and continued to do so at the time of trial.
2.   The teachers documented incidents of the child hitting dolls between the legs; hitting, biting,
and scratching herself and others; endangering herself and others by turning over heavy furniture;
sticking her fingers and other objects in her vagina and rectum; and frequently urinating in her
pants. Gamble documented her suspicion of sexual abuse as early as November 1989.
3.   Billy Kanetzky, Jr. is Kanetzky's child from a marriage previous to his marriage to Mary
Murphy. Billy Kanetzky, Jr. was approximately sixteen years old when this litigation
commenced. He lived with Kanetzky and Toni Kanetzky when the first temporary restraining
order was filed and moved out of the household sometime soon thereafter.
4.   Kanetzky's possessory conservatorship continued upon the conditions that Kanetzky take all
steps to protect and keep the children safe and supervised by an adult while in his care; that the
children never be left unsupervised with Billy Kanetzky, Jr.; and that if Billy Kanetzky, Jr. moved
back into Kanetzky's household, Mary Murphy would be notified in writing immediately.
5.   This Court affirmed the trial court's summary judgment in favor of the grandparents in a
separate appeal. Kanetzky, et al. v. Murphy, No. 3-92-534-CV (Tex. App.--Austin Aug. 11, 1993,
no writ h.) (not designated for publication).
6.   The behavior documented by the teachers is described in note 2, supra.
7.   DHS licensed Hyde Park to operate a day-care center in 1987.
8. Similarly, the psychologists failed to carry their burden of proof by showing that they
reported the child sexual abuse within forty-eight hours of their first suspicions as required by
statute for immunity.
9. [9] The psychologists contend that they owed no duty to any of the appellants - Kanetzky, Toni
Kanetzky or Billy Kanetzky, Jr. - because none of them enjoyed a physician-patient relationship
with either of the psychologists. The psychologists assert that a physician is liable for negligence
only where the physician breaches his professional duty to a patient when there is a physician-patient relationship as a result of a contract, express or implied, that the doctor will treat the
patient with proper professional skill. See Salas v. Gamboa, 760 S.W.2d 838, 840 (Tex.
App.--San Antonio 1988, no writ). A physician may owe a duty of care to non-patient third parties
in some circumstances. See, e.g., Pope v. St. John, No. 3-93-016-CV, slip op. at 3 (Tex.
App.--Austin August 11, 1993, no writ h.); W.C.W. v. Bird, 840 S.W.2d 50, 55-56 (Tex.
App.--Houston [1st Dist.] 1992, writ granted); Gooden v. Tips, 651 S.W.2d 364, 369 (Tex.
App.--Tyler 1983, no writ). But see Dominguez v. Kelly, 786 S.W.2d 749, 751 (Tex. App.--El
Paso 1990, writ denied) (holding that doctor's well-substantiated probable cause to report abuse
negated appellant's malicious-prosecution claim; further holding that doctor established affirmative
defense of immunity; and, in dictum, holding that doctor who diagnosed child as victim of sexual
abuse owed no duty beyond doctor-patient relationship).