Grace **KEHLER, individually and on behalf of the Estates of Michael Trekell and Jayson Kehler, deceased, and Lester C. Trekell and June E. Trekell, Appellant,**

v.

Harold **EUDALY, M.D., Saint Joseph Hospital and John W. Koechel, Ph.D., Appellees.**

No. 2–94–204–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 24, 1996.

Rehearing Overruled Dec. 5, 1996.

Darrell L. Keith, Sue S. Walker, Law Firm of Darrell L. Keith, P.C., Fort Worth, for appellant.

James G. Bennett, Bennett & Hall, L.L.P., Daniel R. Barrett, Fielding, Barrett & Taylor, Richard Griffith, Evelyn R. Leopold, Carol J. Traylor, Jordan M. Parker, Cantey & Hanger, L.L.P., Franklin Moore, Murphy, Moore & Bell, Don Driver, Fort Worth, for appellees.

Before DAY, LIVINGSTON and HOLMAN, JJ.

## OPINION

LIVINGSTON, Justice.

In this appeal we must determine whether Texas law recognizes a cause of action based on a defendant's duty to protect third parties who are injured by an actor's criminal conduct. Appellants appeal from a summary

judgment entered by the trial court in favor of appellees, the defendants in the court below. Appellants sued the appellees for the death damages arising from the murders of Michael Trekell and his four-month-old son, Jayson Kehler, by James Bigby, who had been a patient of the doctors and hospital appellees at various times.

The suit was brought by Grace Kehler, Jayson's mother and alleged common-law wife of Michael Trekell, along with Michael's parents. The claims were asserted under the wrongful death and survival statutes, TEX. CIV. PRAC. & REM. CODE, §§ 71.001–71.011, 71.021 (Vernon 1986), against Bigby's medical providers, but not against Bigby. The trial court found that none of the defendants owed a duty to the victims and granted the defendants' summary judgment motions. We affirm.

### FACTS

James Bigby and Michael Trekell had been friends since 1980. They shared an interest in auto mechanics and spent time at each other's homes. Michael and Grace met sometime in 1985 and began living together in 1986. Their son, Jayson, was born in August 1987.

Dr. Naifees Saifee, who was the Bigby family physician, had seen Bigby off and on for minor ailments from April 1979 to 1985. Bigby was an employee at Frito–Lay and was injured on the job in 1983. Bigby attempted to return to work but ultimately pursued a worker's compensation claim. Sometime in June 1985, Dr. Saifee saw Bigby for the job-related injury that caused lower back pain, headaches, rib and muscle injuries, cervical pain, and numbness in his arms. She referred him to a neurologist and an orthopedic surgeon for his physical conditions. In March 1986, she referred him to Dr. Allen Kent, an orthopedic surgeon for his back and neck pain. Later in September 1986, she referred him to a psychiatrist, appellee Dr. Harold Eudaly, for treatment of his depression. Dr. Eudaly first treated Bigby on September 3, 1986. He diagnosed Bigby as depressed and prescribed antidepressant medication. In August 1985, Dr. Saifee also referred Bigby to Dr. Lincoln

Chin, a neurologist, because of the symptoms related to the job injury. He was simultaneously under the care of another orthopedic surgeon, Dr. John Stasikowski. The last time Dr. Saifee saw Bigby was on November 20, 1987.

Bigby's first hospitalization was on September 26, 1986 when he was admitted by Dr. Saifee to Saint Joseph Hospital for depression. His primary complaint was a burning sensation all over as a result of fumes from air vents during physical therapy. Dr. Eudaly was consulted and was the attending psychiatrist who diagnosed him with schizoaffective disorder with secondary diagnoses of back pain and severe headaches. While at Saint Joseph, he was also seen by Drs. Chin and Kent for pain. He was released by Dr. Eudaly on October 29, 1986 with a psychiatric diagnosis of acute schizoaffective disorder. On Bigby's release, Dr. Eudaly referred him to appellee Dr. John Koechel, a psychologist, for therapy and medication management sessions through about December 18, 1987. Dr. Koechel performed a psychological evaluation and diagnosed him with generalized anxiety disorder with passive-aggressive personality and antisocial traits.

On July 2, 1987, Dr. Eudaly admitted Bigby to CPC Oakbend Hospital after receiving a call from Dr. Koechel indicating Bigby was suicidal. He appeared "withdrawn, cried easily and his mood was pervasively depressed." Dr. Koechel performed another psychological evaluation and diagnosed him with "major depression with melancholia, passive-aggressive personality and prominent anti-social traits." Dr. Eudaly's diagnosis was dysthymic disorder and secondarily chronic muscle strain. During his stay, he left a suicide note in an administrator's box and asked nurses about fruit pits with poison. After treatment and therapy, he was released on October 29, 1986, much improved. Between September 29, 1986 and December 18, 1987, Dr. Koechel saw Bigby forty times.

Bigby had scheduled an appointment with Dr. Eudaly on November 10, 1987, but did not keep it. Dr. Koechel saw Bigby for an office visit on November 23, 1987. Dr. Koechel recommended that Bigby be admitted

again because of the severity of his depression. That night, Bigby's mother took him to the emergency room at Saint Joseph Hospital because she thought he had overdosed, which was "unconfirmed."

Later, on December 1, 1987, Dr. Eudaly heard from Bigby and recommended admission to Saint Joseph Hospital because of increasing depression of major depressive disorder. During this stay, Bigby received electroshock therapy (ECT) treatments that improved his mood.

On December 11, 1987, Bigby left the hospital after his third ECT treatment before being officially discharged from the hospital. He called the hospital indicating he did not intend to return, despite the nurses' requests to do so. Dr. Eudaly was notified by the hospital, and he told the staff to allow Bigby to stay out overnight. The next morning when Dr. Eudaly and Bigby talked, Dr. Eudaly encouraged Bigby to return, or at least continue his medication (which had been discontinued during the ECT treatment) and continue outpatient treatment. Bigby did not return and Dr. Eudaly changed Bigby's status to "discharged" on December 12, 1987 with a final psychiatric diagnostic impression of major depressive disorder.

On December 18, Dr. Koechel saw Bigby for an office visit. Bigby complained about the ECT treatments and said he wasn't going back. Dr. Koechel apparently did not inform Dr. Eudaly of Bigby's intent.

Eleven days after Bigby left the hospital, he killed two Frito-Lay employees. The next day, he killed Michael and Jayson and was subsequently convicted of capital murder on both counts and sentenced to death. *See Bigby v. State*, 892 S.W.2d 864, 870 (Tex. Crim.App.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995).

## PROCEDURAL HISTORY

On December 1, 1989, appellants filed suit against the doctors and hospital appellees and Dr. Saifee and Jane A. Bernhardt, C.S.W. Dr. Saifee filed and was granted a summary judgment in her favor, which was severed from this suit, and appellants nonsuited Bernhardt.

All remaining appellees subsequently filed motions for summary judgment that were granted. Appellants have appealed those summary judgments except for the summary judgment in favor of defendant CPC Oakbend Hospital. The trial court found that the appellees owed no legal duty to the appellants as a matter of law. While some of the appellees asserted various bases for their motions, they each contained the "no legal duty" theory upon which the judgment was ultimately entered.

## STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant, the appellants. *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proven all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact on the element challenged by the defendant. *Centeq Realty,* 899 S.W.2d at 197.

In reviewing the summary judgment evidence, we are only allowed to review the summary judgment evidence on file at the time of the hearing. Statement of facts and arguments made at the hearing are not considered on appeal from the granting of a summary judgment, as correctly argued by Dr. Eudaly. TEX. R. CIV. P. 166a(c); *McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 341 (Tex.1993). While summary judgment may not generally be based on the weakness of the nonmovant's pleading or proof, it may if it shows the absence of a right of action or an insurmountable bar to recovery. *State v. Durham,* 860 S.W.2d 63, 68 (Tex.1993); *James v. Hitchcock I.S.D.,* 742 S.W.2d 701, 704 (Tex.App.—Houston [1st Dist.] 1987, writ denied).

Appellants argue that the trial court erroneously granted the summary judgment for failure to state a cause of action. In essence, appellants argue that they should have been given the opportunity to replead viable causes of action and that the appellees should have been required to specially except to the appellants' Fourth Amended Original Petition. These arguments were asserted by appellants in their motion for new trial based generally on *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933–34 (Tex.1983).

■ In general, it is improper to grant a summary judgment on a deficient pleading's failure to state a cause of action when the deficiency can be attacked through special exceptions. *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974); *see also In re B.I.V.,* 870 S.W.2d 12, 13–14 (Tex. 1994); *Pietila v. Crites,* 851 S.W.2d 185, 186 n. 2 (Tex.1993). An exception to this rule exists when the pleading deficiency is the type that cannot be cured by an amendment; in such cases a special exception is unnecessary and a summary judgment based on the pleading's failure to state a legal claim is in order. *Jacobs v. Cude,* 641 S.W.2d 258, 261 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd. n.r.e.); *see also Frasier v. Schauweker,* 915 S.W.2d 601, 605 n. 3 (Tex.App.—Houston [14th Dist.] 1996, no writ) (trial court could not have granted "no cause of action" summary judgment without first giving plaintiffs adequate opportunity to replead unless petition affirmatively demonstrated no cause of action existed or recovery was barred, i.e., repleading could not cure defect) (citing *Peek v. Equipment Serv. Co. of San Antonio,* 779 S.W.2d 802, 805 (Tex.1989)); *Ryan v. Friesenhahn,* 911 S.W.2d 113, 116 (Tex.App.—San Antonio 1995, writ requested) (summary judgment may also be proper if pleading deficiency is the type that could not be *cured* by amendment); *Cavanaugh v. Jones,* 863 S.W.2d 551, 553 (Tex.App.—Austin 1993, writ denied) (trial court may grant summary judgment where plaintiff fails to state a cause of action and has been given opportunity to replead). A recent supreme court opinion goes further, stating that when a plaintiff failed to object or request an opportunity to amend their petition following a motion for summary judgment, they waived their complaint. *Kassen v. Hatley,* 887 S.W.2d 4, 16 n. 10 (Tex.1994). Thus, it was proper for the trial court to grant the summary judgment if it was correct in its ruling that these defendants owed "no duty" to appellants because "duty" is an essential element of negligence.[1]

---

1. The record shows orders on special exceptions were signed by the court in November and December of 1990 and on August 7, 1991. However, because none of the motion(s) nor order(s) were included in the transcript, we cannot determine to which parties they applied. We also note that one party filed special exceptions in October of 1992 and plaintiffs' petition was amended for the fourth time over a year later.

## DISCUSSION OF THE SUMMARY JUDGMENT MOTIONS AND THE PLEADINGS

■ Because the summary judgment order was based upon and limited to the "no duty theory," appellants have properly challenged that theory only. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (where trial court's order explicitly *specifies* ground relied on, summary judgment can only be affirmed on theory relied on by trial court, otherwise case must be remanded).

Appellants argue that they alleged a "duty" under three theories—*Tarasoff,*[2] *Otis Engineering,*[3] and Texas common law—and appellees limited their motions for summary judgment to the "no duty theory" set forth in *Tarasoff.* In other words, appellants argue that appellees only asserted that there was no "readily identifiable victim" or there was no "foreseeable danger" under the *Tarasoff* theory and that because appellees failed to move for summary judgment under *Otis Engineering, El Chico Corp. v. Poole,* 732 S.W.2d 306 (Tex.1987) and other Texas common-law causes of action, their other causes of action remain unresolved.

Appellants further argue that the issue of the existence of a duty is usually a question of law but when foreseeability, as an element of that duty, requires a resolution of some fact issue, it is a question of fact. In other words, where knowledge and foreseeability are elements of the duty alleged, the fact finder should be allowed to make the factual determination on the foreseeability of the risk and the foreseeability facts to establish the foreseeability of the risk involved. Appellants base this argument on the Texas Supreme Court's application of the *Palsgraf* rule used in both *Otis Engineering* and *El Chico. Palsgraf* is the seminal case that analyzes the duty question by looking at "the risk reasonably to be perceived as defining the duty to be obeyed."[4]

Appellants also cite *Midkiff v. Hines,* 866 S.W.2d 328, 332 (Tex.App.—Houston [1st Dist.] 1993, no writ) ("no duty" summary judgment constituted error when genuine fact issue existed on foreseeability of risk of harm from criminal conduct of third parties) and *Kendrick v. Allright Parking,* 846 S.W.2d 453, 457–58 (Tex.App.—San Antonio 1992, writ denied) ("no duty" summary judgment constituted error when fact issue existed on whether, based on what defendant knew or should have known, defendant should have foreseen criminal attack on appellant).

Appellants focus on the affidavit of their expert, Dr. Dietz, in support of their position that Dr. Eudaly, Dr. Koechel, and Saint Joseph Hospital could have determined Bigby's homicidal tendencies *and could have ascertained the names of Bigby's foreseeable victims.* In other words, had they acted within appropriate standards of care, each would have known Bigby's dangerousness to others and his intended victims. Bigby had not previously volunteered this specific information.

### Saint Joseph Hospital's Motion for Summary Judgment

Saint Joseph Hospital's motion is based on three theories:

1) that plaintiffs' pleadings do not state a cause of action under Texas law because there was no identifiable victim (no duty);

2) that plaintiffs' pleadings do not state a cause of action under the "foreseeable danger" test of other jurisdictions because there was no "foreseeable danger" to others (no duty); and

3) that defendant is entitled to summary judgment because it has met the standard of care in its treatment of James Bigby (no breach of duty).

■ In Saint Joseph Hospital's post-submission brief, they assert, for the first time

---

2. *Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 23, 551 P.2d 334, 343 (1976).

3. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 311 (Tex.1983).

4. *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928); *see Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990).

on appeal, an additional ground for granting their motion for summary judgment—lack of proximate cause. We agree with appellants that Saint Joseph Hospital cannot now assert a ground not previously raised by its motion for summary judgment. However, the issue is moot since the summary judgment was granted only on the basis that Saint Joseph Hospital owed no duty to the victims and the summary judgment can be upheld on that theory only. *State Farm Fire & Casualty Co.,* 858 S.W.2d at 380.

### Dr. Eudaly's Motion for Summary Judgment

Dr. Eudaly's motion is based on the theory that plaintiffs' allegations of "failure to protect" are based on an alleged failure to warn the decedents or on an alleged failure to confine or restrain Bigby, which does not exist and cannot exist under current case law until and if there is a specific threat against a specific victim (i.e., no duty).

### Dr. Koechel's Motion for Summary Judgment

Dr. Koechel's motion is also based on the claim that he owed no duty to confine or restrain Bigby or warn the victims since Bigby never made any threat against any identifiable person (i.e., no duty).

### Review of Appellants' Theories That May Create a Duty

Appellants' claims, filed under the wrongful death statute, the survival statute, and Texas common law, all are based on a single cause of action—negligence. Although the "theories" or "bases" for their claims vary against each of the defendants because of the factual distinctions involved in their relationships to Bigby, the actor, they are all claims of negligence.

 Appellants claim that different legal theories support their negligence claims and that the appellees were required to disprove each and every legal theory under which appellants assert their negligence claims. However, *any* negligence claim requires proof of *these* elements: 1) existence of a legal duty; 2) breach of that duty; and 3) damages proximately resulting from that breach. Disproving *any one* of the elements under any "theory" of that specific element may be sufficient for a defendant to obtain a summary judgment. As mentioned above, appellants now argue that they asserted negligence under several theories and that because appellees' motions for summary judgment challenge only the *Tarasoff* duty theory, the summary judgment is not final because other claims may be outstanding.

 However, Plaintiffs' Fourth Amended Original Petition alleges claims based on *Tarasoff,* not on *Otis Engineering* and *El Chico.* The first time *Otis Engineering* and *El Chico* are specifically addressed is in Appellants' Brief in Opposition to Defendants' Motions for Summary Judgment. Briefs are not summary judgment pleadings and are not to be considered by the appellate court. *McConnell,* 858 S.W.2d at 339–41. Neither are letters between the parties or letters between the parties and the court. *Shannon v. Texas Gen. Indem. Co.,* 889 S.W.2d 662, 664 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Martin v. Southwestern Elec. Power Co.,* 860 S.W.2d 197, 199 (Tex.App.—Texarkana 1993, writ denied); *Gandara v. Novasad,* 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ). Therefore, appellees were only required to move for summary judgment based on the claims asserted in the petition, not claims or analogous theories asserted in responses to the motions for summary judgment and subsequent briefs. *McConnell,* 858 S.W.2d at 341. A summary judgment granted by a trial court is a final judgment as long as it disposes of all claims asserted *in the petition. Harris County Appraisal Dist. v. Johnson,* 889 S.W.2d 531, 532 (Tex.App.—Houston [14th Dist.] 1994, orig. proceeding). Inclusion of a "Mother Hubbard" clause, which was done here, assures that all of the claims have been disposed. *Atchison v. Weingarten Realty Management Co.,* 916 S.W.2d 74, 76 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Amerivest Inc. v. Bluebonnet Savings Bank, F.S.B.,* 897 S.W.2d 513, 515–16 (Tex. App.—Fort Worth 1995, writ denied).

The core of appellants' claims are based on the type of duty created in 1976 by the

California Supreme Court, commonly referred to as a *"Tarasoff* duty." *Tarasoff*, 131 Cal.Rptr. at 22, 551 P.2d at 342. In *Tarasoff*, the parents of the murdered victim, Tatiana Tarasoff, sued the university after a man named Poddar told the psychotherapist doctors, employed by the Cowell Memorial Hospital at the University, of his intent to kill an unnamed girl, Tatiana; whom he subsequently killed. *Id.* at 19, 551 P.2d at 339. The evidence showed she was a readily identifiable victim. *Id.* at 25, 551 P.2d at 345.

Therapists examined Poddar and decided he should be committed. *Id.* at 20 n. 2, 551 P.2d at 340 n. 2. One of the defendant doctors directed the police to take Poddar into custody, which they did. *Id.* at 20, 551 P.2d at 340. However, the officers who took him into custody became satisfied he was rational, and he promised to stay away from Tatiana. *Id.* It was at this point that the chief of psychiatry countermanded the other therapists' decision and withdrew the commitment order, and Poddar was released. *Id.*

The breach of the duty, if any, in *Tarasoff* was alleged to be either 1) failure to warn (the intended victim) or 2) failure to confine (the actor). The court, in discussing the existence of whether the psychiatrists owed a duty to the victim, stated:

> [W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim.

*Id.* at 22–23, 551 P.2d at 342–43. Citing section 315 of the RESTATEMENT (SECOND) OF TORTS, the court stated that a duty to control or a duty to warn can be created if there is a "special relationship to either the person whose conduct needs to be controlled or in a relationship to [sic] the foreseeable victim of that conduct." *Id.* at 23, 551 P.2d at 343; see RESTATEMENT (SECOND) OF TORTS § 315 (1965). By finding that one role of a therapist is to make diagnoses and predictions of whether a patient presents a serious danger of violence and that such role is comparable to that of other doctors' and professionals' type of judgment, the court concluded that

the therapist must in essence 'forecast' a patient's violence. *Tarasoff*, 131 Cal.Rptr. at 25, 551 P.2d at 345. "[T]he therapist need only exercise 'that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under similar circumstances.'" *Id.* (citations omitted.)

In balancing the competing interests society has in promoting open communication between patient and therapist, the patient's right to privacy, and the safety of the public from violent attacks, the court noted that the California Legislature had basically undertaken that task. The California Evidence Code established a general privilege for confidential communications between patient and psychotherapist but created an exception from the privilege "if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent this threatened danger." CAL. EVID. CODE § 1024 (West 1986). In applying the evidentiary privilege to create a duty, the court stated, "[t]he protective privilege ends where the public peril begins." *Tarasoff*, 131 Cal. Rptr. at 27, 551 P.2d at 347. The court allowed the plaintiff the opportunity to replead to state a cause of action against the therapists to whom the patient confided his intent to kill the plaintiff's daughter on a failure to warn theory of duty. *Id.* at 14, 28, 551 P.2d at 334, 348.

The California Supreme Court subsequently clarified the *Tarasoff* rule, stating:

> [T]he therapist has no general duty to warn of each threat.... Although the intended victim as a precondition to liability need not be specifically named, he [the victim] must be "readily identifiable."

*Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 76, 614 P.2d 728, 734 (1980). In *Thompson*, the actor threatened to kill a "young child residing in the [his mother's] neighborhood." *Id.*, 167 Cal.Rptr. at 72, 614 P.2d at 730. After his release, he killed a young child and the child's parents sued the county that had custody of the actor, a juvenile offender. *Id.* The parents

contended that the county was liable for its failure to warn the police and all parents of children in the neighborhood or to warn the juvenile's mother of his expressed threat. *Id.* at 74, 614 P.2d at 732.

In affirming the dismissal of the case, the California Supreme Court observed the following key factors in determining the existence of a duty:

> [F]oreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty ..., and the availability, cost and prevalence of insurance for the risk involved.

*Id.* at 74–75, 614 P.2d at 732–33 (quoting *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal. Rptr. 97, 100, 443 P.2d 561, 564 (1968)). While discussing *Tarasoff,* the court reiterated that the duty created in *Tarasoff* was limited to the foreseeable victim of danger. *Id.* at 76, 614 P.2d at 734. Thus, the court considered that while the victim does not necessarily have to be specifically named, the victim must be *"readily identifiable." Id.* (emphasis added). Because the victim was not specifically named and was a member of a general group of neighbors, the court did not impose a duty on the county to warn, protect, or control.

The question raised by this case then, is to determine whether *Tarasoff* and *Thompson* have been adopted by the Texas courts, if so, to what extent, and then, whether they apply here.

### The Law of Duty in the State of Texas

[9] Any claim based on negligence in Texas requires proof of three elements: a legal duty owed by one to another; breach of that duty; and damages that proximately result from that breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The *Phillips* case, citing *El Chico,* establishes *duty* as the threshold inquiry in a negligence case. *Id.* (citation omitted).

The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* In *Phillips,* the court, citing *Otis Engineering,* stated:

> In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.

*Id.* (citation omitted). "Of all these factors, foreseeability of the risk is 'the foremost and dominant consideration.'" *Id.* (quoting *El Chico,* 732 S.W.2d at 311).

According to *Phillips* and section 315 of the RESTATEMENT (SECOND) OF TORTS, there is generally no duty to control the conduct of third persons. *Id.*; RESTATEMENT (SECOND) OF TORTS § 315 (1965). The exceptions are limited to situations where a special relationship exists between the actor and the third person such as employer/employee, parent/child, and, in some situations independent contractor/contractee. *Id.* Although the *Phillips* court acknowledged the *Palsgraf* rule that the "risk reasonably to be perceived defines the duty to be obeyed," and that such a rule was applied in *El Chico* and *Otis Engineering,* those cases were held distinguishable from *Phillips. Id.* at 526.

In the 1983 *El Chico* case, the Texas Supreme Court explored the application of duty to third parties. In *El Chico,* two wrongful death and survival cases were consolidated to determine whether a third party injured by an intoxicated driver could recover damages from the alcoholic beverage licensee who allegedly sold liquor to intoxicated drivers, thus violating the Texas Alcohol and Beverage Code. In both cases, the summary judgment and dismissal by the respective trial courts were reversed by the intermediate appellate courts, and those decisions were affirmed by the Texas Supreme Court. *El Chico,* 732 S.W.2d at 315.

In its discussion of whether a duty existed, the supreme court, citing *Otis Engineering,*

focused on the foreseeability of the risk as the dominant consideration:

> The duty here is merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others.... The duty is the same whether the foreseeable injury involves the drunkard himself or a third party who may be placed in peril because of the drunkard's condition. Moreover, the common law recognizes the duty to take affirmative action to control or avoid increasing the danger from another's conduct which the actor has at least partially created.

*Id.* at 311–12 (citation omitted).

The court also acknowledged that the standard of conduct was, in these cases, determined by statute because the sale of liquor to an intoxicated person was a penal code violation. *See* TEX. ALCO. BEV. CODE ANN. § 101.63(a) (Vernon 1978). Thus, the *El Chico* court based liability on a breach of a statutorily created duty to the public. *Id.* at 313.

In focusing on the foreseeability factor *in the proximate cause analysis*, the court noted that the actor "should have anticipated the dangers his negligent act creates for others.... Foreseeability does not require the actor anticipate the particular accident, but only that he reasonably anticipate the general character of the injury." *Id.* (citations omitted). After applying the statutory prohibition found in the Alcoholic Beverage Code, the court held that "[a]n alcoholic beverage licensee owes a duty *to the general public* not to serve alcoholic beverages to a person when the licensee knows or should know the patron is intoxicated." *Id.* at 314 (emphasis added).

In *Otis Engineering*, the spouses of occupants killed in an accident with an intoxicated employee brought a wrongful death action against his employer. Although the deaths did not occur while the employee, Robert Matheson, was in the course of his employment, the accident occurred shortly after he left his place of employment in an intoxicated state. *Otis Engineering*, 668 S.W.2d at 308. Apparently, Matheson was sent home during the middle of his shift *because he was intoxicated* and his supervisor knew it. *Id.* There

was additional evidence that Matheson's alcohol problem was generally known by his supervisor and other employees. *Id.* Otis's motion for summary judgment was granted on the basis that Otis owed no duty, as a matter of law, to the victims. *Id.* at 309. The supreme court upheld the appellate court's reversal of summary judgment in favor of Otis, stating:

> While a person is generally under no legal duty to come to the aid of another in distress, he is under a duty to avoid any affirmative act which might worsen the situation. One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care.

*Id.* (citations omitted). The court specifically held, as related to an employer/employee duty, that "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstance would take to prevent the employee from causing an unreasonable risk of harm to others." *Id.* at 311; *see also Randle v. Stop N'Go Markets of Texas, Inc.*, 929 S.W.2d 17, 18–19 (Tex.App.—Houston [1st Dist.] 1996, n.w.h.);

In *Otis Engineering* the court created the duty to prevent the employee from causing an unreasonable risk of harm to others, where, because of an employee's incapacity, an employer exercises control over the employee. *Id.* at 311. An *Otis Engineering* type of duty requires: 1) a special relationship between defendant and actor; and 2) exercise of control over the actor by the employer. *Otis Eng'g*, 668 S.W.2d at 309–10. *Otis Engineering* created liability under the special relationship theory of employer and employee.

In *Williams v. Sun Valley Hosp.*, 723 S.W.2d 783, 784 (Tex.App.—El Paso 1987, writ ref'd n.r.e.), a mental patient escaped from the hospital and threw himself in front of a car driven by the appellant. The patient was killed and the appellant was injured. The El Paso Court of Appeals held that the

hospital did not owe the driver a duty to warn because the actor's conduct was not foreseeable. "Where there is no allegation of a threat or danger to a *readily identifiable person,* we, like those courts whose logic we follow, are unwilling to impose a blanket liability upon all hospitals and therapists for the unpredictable conduct of their patients with a mental disorder." *Id.* at 787 (emphasis added).

In *Gooden v. Tips,* 651 S.W.2d 364, 365 (Tex.App.—Tyler 1983, no writ), the Goodens were injured by Goodpastures in a traffic accident. They sued Goodpastures's doctor for negligence in failing to warn her not to drive while under the influence of the drug Quaalude. Gooden urged the court to recognize a physician/third-party duty to "use reasonable care to protect the driving public when a physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." *Id.* at 369. The appellate court held that, in focusing on the foreseeability of the potential harm, the doctor may have had a duty to warn *her patient* not to drive. *Id.* However, it explicitly distinguished this case from *Tarasoff* and specifically held that the doctor had no duty to control the conduct of the patient since there was no indication that the doctor had "taken charge" of the patient. *Id.* at 370. Thus, the duty to warn was limited to warning the patient, not some third party.

In *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 583 (Tex.1996), a murdered woman's parents sued the Kerrville state hospital for wrongful death damages after she was murdered by her husband, who had been released from the hospital. *Id.* The husband had originally been treated at the hospital in 1989 after he had threatened his wife and resisted arrest. *Id.* Pursuant to a court order, he subsequently began outpatient commitment for nearly a year. *Id.* In May of the next year, he voluntarily checked himself into the hospital for treatment. He was released two days later, and his outpatient commitment was reinstated. *Id.* About one week later, he brutally murdered his estranged wife. *Id.* The trial court's $200,-000 judgment under the Texas Tort Claims Act was affirmed by the appellate court.

*Kerrville State Hosp. v. Clark,* 900 S.W.2d 425, 436 (Tex.App.—Austin 1995), *rev'd,* 923 S.W.2d 582 (Tex.1996). The appellate court agreed with the parents that the hospital had a duty to third parties injured by their patient because they knew or had reason to know he was a danger. *Id.* In other words, the Austin Court of Appeals would impose a duty to use reasonable care in the release of the husband based on the control the hospital had over the husband. The appellate court held that the duty then would be to confine the patient (seek involuntary in-patient commitment) or to control the patient (prescribe medicine that may have prevented the episode). *Id.* The court acknowledged the hospital's claim that no duty should be imposed because there was no readily identifiable victim, but did not reach this issue on the merits because of its holding on the duty to the general public to use reasonable care in its release of the husband. The Texas Supreme Court reversed on the hospital's claim of sovereign immunity and therefore did not reach the issue of the duty of the hospital to confine or control its patient. *Kerrville State Hosp.,* 923 S.W.2d at 586. That aspect of the appellate opinion remains undisturbed and indicates at least a recognition of a *Tarasoff/Thompson* analysis.

The only other appellate court that has adopted a *Tarasoff/Thompson* duty under somewhat analogous facts, the El Paso Court of Appeals, found that there was no duty and there could be no duty because there was no readily identifiable victim. *Williams,* 723 S.W.2d at 787. Whether the duty is to warn or to confine is tied more to identifying what the actual duty is. In other words, if an action threatens a specific victim or a readily identifiable victim, then the duty is probably to warn. *See Gooden,* 651 S.W.2d at 370. But when no specific or readily identifiable victim is threatened, perhaps the duty would be to confine the actor, a much more drastic and restrictive approach. *Kerrville,* 900 S.W.2d at 436.

The Texas Supreme Court has not adopted the *Tarasoff* duty to warn and neither has this court. Texas only recognizes duties to third parties if the potential act is foreseeable. *Wheaton Van Lines, Inc. v.*

*Mason,* 925 S.W.2d 722, 727–30 (Tex.App.—Fort Worth, May 30, 1996, n.w.h.).

All of the appellants' causes of action focus on the existence or nonexistence of a duty to third parties under Texas law. The only time duties to third persons have been recognized by the Texas Supreme Court are when there is a special relationship between the defendant and the actor that implicitly includes some right to control the action (*Otis Engineering* employer/employee) or when the defendant who created or contributed to the actor's situation violated a statute (*El Chico* sale of liquor to intoxicated patron) or when a duty is imposed to protect the general driving public. *Praesel v. Johnson,* 925 S.W.2d 255, 257 (Tex.App.—Corpus Christi 1996, no writ); *Gooden,* 651 S.W.2d at 369.

The *Otis Engineering* theory of duty is inapplicable because there was no employer/employee relationship between the appellees and Bigby that would dictate the type of control imposed on the defendant, Otis. Additionally, there was no basis for the appellants to assert an *El Chico* theory because it cannot be said that the defendants' conduct necessarily created a situation that was unlawful. In essence, the appellants have attempted to use *Otis Engineering* and *El Chico* in their arguments as analogies to support the application of and extension of a *Tarasoff/Thompson* duty to warn or to confine to situations where the victim is unidentified or not readily identifiable in Texas.

While it is likely a foreseeable duty would be recognized in Texas under a *Tarasoff/Thompson* fact situation with an identifiable victim, this case would nevertheless fail to fall within its parameters. Thus, each of the appellees' motion for summary judgment properly responded to the appellants' only viable claim, a claim arising under *Tarasoff/Thompson* that has not yet been affirmatively adopted by our Texas Supreme Court and, in any event, is not applicable here. *See Kerrville State Hosp.,* 923 S.W.2d at *passim.*

Appellants' discussion on the quasi-factual issue involved on foreseeability is moot because their claims fail on the duty question. Appellants' point of error is overruled, and the trial court's summary judgment based on no duty is affirmed.