Brad VINEYARD, Appellant,

v.

Irvin A. KRAFT and Steven DeAlmeida, Appellees.

No. A14–91–00820–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 26, 1992.

Rehearing Denied April 16, 1992.

James A. Drexler, Houston, for appellant.

Marc A. Sheiness, Frank N. Luccia, Wesson H. Tribble, Tina Snelling, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal of summary judgments granted in favor of Irvin A. Kraft and Steven DeAlmeida, appellees. Appellant, Brad Vineyard, sued appellees for negligent misdiagnosis and negligent infliction of emotional harm. Appellant based his causes of action on appellees' conclusion that appellant sexually abused his daughter which they communicated to appellant's ex-wife and health care professionals appointed by a Fort Bend County District Family Court to evaluate appellant and his former wife in connection with determining the best interests of their infant child in a pending divorce and custody proceeding. The trial court concluded in two consecutive orders, an interlocutory summary judgment entered in favor of Steven DeAlmeida and then a summary judgment in favor of Irvin A. Kraft which disposed of all remaining issues and parties, that appellees were entitled to summary judgment as a matter of law. We affirm.

In 1989, appellant and his wife, Greta Anderson, were involved in divorce and custody proceedings. Appellant and his wife shared joint custody and access to their 2 year old daughter. As the case progressed, appellant became aware that his wife thought he was sexually abusing his daughter. Greta took Britta to appellees, Kraft and DeAlmeida, for psychiatric evaluation and treatment and shared her concern that she thought her husband may

have sexually abused their daughter. Kraft is a medical doctor, board certified in child and adult psychiatric medicine, and DeAlmeida is a psychotherapist and an associate of Kraft's practice.

On October 11, 1989, appellees signed the following consultation note:

Re: Britta Anderson (Vineyard)

Date of Report: October 11, 1989.

Britta Alexa Anderson Vineyard, a 2½-year-old White girl, was first seen on July 18, 1989. She is currently living with her mother and with her half-brother Peter, who is 5 months-old. She was referred by Battin Clinic. The mother charges that the father is physically abusive to Britta and reports that there is evidence that Britta is being sexually abused. There is a long heated custody battle over Britta, and the mother reports that she divorced her former husband because he was physically abusive. A great deal of information has been provided by the mother relative to her understanding of the situation and can be found in the chart.

The mother has not completed the requested paperwork relative to Britta, and a full consultation will be completed at the time that such information is available.

Britta is a bright, lovable, likable, affectionate, 2½-year-old. She is very verbal and appears to be quite bright for her age. The Standard–Binet Intelligence Scale was completed by Battin Clinic and can be found in the chart. At the point of that testing, she was functioning in the average range for a person her age. Interactions seems to be somewhat more insightful and brighter than some other 2½-year-olds. Britta easily formed a relationship with the therapist but has been very reluctant to talk about issues of whether or not there has been any sexual abuse going on. She has reported on one occasion that the father has hit her and has demonstrated by slapping her leg. This therapist has not seen evidence of physical abuse in terms of injuries that can be verified. There has continued to develop a therapeutic relationship, hop-

ing to verify or rule out the possibility of sexual abuse. On October 3, 1989, Britta was asked whether her daddy "licks her pee-pee" which is what she had been telling friends and her mother and she responded with "Yea." She then demonstrated licking the vaginal area of a Barbie Doll which she had undressed. This is the first clear evidence that there may be sexual abuse occurring and this was reported to Children's Protective Service in Fort Bend County. Children's Protective Services has been involved in the case off and on for some period of time. Therapy is also focused on helping the mother maintain some emotionally [sic] stability, since the mother seems to be rather overwhelmed with the difficulties that she is facing, including the possible abuse of her daughter and maintaining her family. Further investigation of possible abuse will continue in cooperation with Children's Protective Services and attempts will be made to help this family stabilize. A full consultation report will be furnished once additional information on the child's developmental history is supplied by the mother.

DeAlmeida testified during appellant and Greta's divorce and custody trial that at the October 3, 1989 session described above, he assessed that Greta was in some turmoil regarding the upcoming court hearing. When he finished the session with Britta he talked briefly with the mother. On October 4, 1989, one day after the session, Greta telephoned DeAlmeida at the Kraft Clinic and left the following message:

Could you call the ad litem and the CPS official in view of last afternoons developments. Britta was very itchy in her "private parts." She asked Britta what was wrong and Britta said something about penis—Greta was shocked. Court case been delayed until Jan.—now Britta has 3 mos. of abuse to look forward to. Vagina was red. Talking about Harry and how Daddy gives her over to Harry. No idea who he is.

DeAlmeida further testified at the divorce and custody trial that on November 14, 1989, Britta made her first spontaneous

statement to him that her daddy licked her pee-pee. DeAlmeida testified that he conveyed this spontaneous statement to Britta's mother. He could not recall if he told her the exact words, but stated it would be more likely than not that he told her what the child said.

Further at the hearing DeAlmeida reported that he had a telephone conversation with Kit Harrison, the court appointed psychologist, hired to evaluate Vineyard and Anderson and Britta to determine the child's best interests. The phone call took place on December 19, 1989. DeAlmeida testified that Harrison told him that it was his recommendation that appellant stop seeing Britta and that he was going to ask the ad litem to change the order regarding custody visitation.

Appellant recited in his own affidavit that at some point following the recommendation to the Court that appellant not be the primary caretaker of Britta, Greta refused to comply with court orders to allow an independent psychologist, Dr. Jerome Brown, to determine whether visitations between Britta and her father should be allowed. At some time, several months prior to April 1991, Greta went into hiding with Britta and was later found in Rochester, Minnesota. Britta was placed in a foster home and appellant stated he had only limited and infrequent contact with his daughter and that his loving, nurturing relationship with his daughter had ceased. Appellant filed suit against Kraft and DeAlmeida for negligent misdiagnosis and negligent infliction of emotional harm as the result of their erroneous conclusion that he had sexually abused his daughter and then influenced Greta to disobey court orders and go into hiding and influenced the court to deny him the right to custody of Britta. Both appellees moved for summary judgment on the grounds that the record conclusively disproved that any duty was owed appellant by appellees. The trial court consecutively granted each of appellees' motions.

■ To be entitled to summary judgment, appellees had the burden to establish that there existed no genuine issues of

material fact thereby entitling them to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991) (citing *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979)). An appellate court must resolve all doubts against the movant and view the evidence in the light most favorable to the non-movants. *Id.* (citing *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex. 1990)).

■ To prevail in summary judgment, appellees were required to disprove, as a matter of law, at least one of appellant's essential elements in each of appellant's causes of actions. *Id.* (citing *Citizens First National Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976)). Appellant sued appellees for negligent misdiagnosis and negligent infliction of emotional harm. Appellees moved for summary judgment on the ground that appellees owed no duty to appellant in evaluating Britta to entitle him to a cause of action and that all communications were privileged.

In appellant's three points of error, appellant contends the trial court erred in granting summary judgment because (1) appellees owed him a duty in making their medical evaluation of his daughter and in communicating that conclusion to third parties; (2) genuine issues of material fact exist whether DeAlmeida made nonprivileged third-party communications; and (3) genuine issues of material fact exist whether DeAlmeida's communication of diagnosis to third parties proximately caused damage to appellant. The affidavit of DeAlmeida supporting DeAlmeida's motion for summary judgment stated that DeAlmeida never communicated that appellant sexually abused Britta and only communicated an opinion regarding Britta's condition in three judicial settings: (1) the temporary custody hearing concerning Britta; (2) the trial concerning custody of Britta; and (3) a Grand Jury investigation concerning appellant. Appellant makes no claim that Kraft communicated a misdiagnosis, but sues Kraft under the theory of respondeat superior. Appellant further does not contest

that DeAlmeida's communications in the judicial settings were privileged. Appellant argues that there exist material issues of fact as to whether DeAlmeida communicated his opinion outside the judicial setting to Britta's mother and professionals appointed by the Fort Bend County District Family Court to determine the best interest of the child.

██ Once a movant negates an essential element of plaintiff's cause of action, the nonmovant can defeat summary judgment only by producing controverting summary judgment evidence sufficient to raise a material issue of fact. *Elam v. Yale Clinic,* 783 S.W.2d 638, 643 (Tex.App.—Houston [14th Dist.], no writ) (citations omitted). Appellant filed a personal affidavit. He did not state any personal knowledge of appellees making a statement outside the judicial setting, but states that a fact issue is raised by the circumstances. He recites that some time after DeAlmeida reported that Britta had announced her father had touched her "pee-pee", Greta refused to comply with court orders and fled to Minnesota. He further states that some time later, the court denied him custody of Britta despite an earlier recommendation by Dr. Cox that he be appointed the sole managing conservator of Britta. In appellant's same affidavit, he recites that Greta had suspicions regarding sexual abuse by appellant even before taking Britta to appellees, and the phone message appellant attaches to his summary judgment proof from Greta to DeAlmeida suggests that Greta may have seen physical evidence of abuse after DeAlmeida's evaluation of Britta. Despite the somewhat contradictory affidavit by appellant and the speculative nature of his affidavit, summary judgment evidence must be viewed in the light most favorable to nonmovant, conflicts in evidence ignored and evidence which tends to support the nonmovant's position accepted as true. *Borg–Warner Acceptance Corporation v. C.I.T. Corporation,* 679 S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.) (citing *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965).

██ Therefore, the serious question on this appeal is whether a legal duty arises between a nonparticipating parent and a mental health professional who makes an evaluation of a child's condition when the participating parent requests the evaluation because he or she suspects child abuse by the other parent. The existence of duty of care is a question of law based upon the facts surrounding the occurrence in question. *Oldaker v. Lock Construction Company,* 528 S.W.2d 71, 77 (Tex.Civ.App.—Amarillo 1975, writ ref. n.r.e.). It is clear that a duty exists between a doctor and child-patient in the doctor's diagnosis and treatment; but it is not clear that a doctor has a duty to a parent who did not take the child to the doctor for evaluation. The injury appellant alleges in this case, is not harm to the child as a result of the diagnosis, but harm to the parent as the result of communication of that diagnosis, outside the setting of judicial hearings.

There are no cases in Texas which have found a legal duty exists between a mental health professional and a parent in this circumstance. However, there is an appeals court case with facts very similar to the facts in the present case where the court found no legal duty existed. *Dominguez v. Kelly,* 786 S.W.2d 749, 751 (Tex. App.—El Paso 1990, writ denied) (court would not allow negligence cause of action by father who sued the doctor who examined his child upon request of Texas Department of Human Service and found that sexual abuse had occurred resulting in father's criminal prosecution, because no legal duty was owed to the father). Appellant argues that *Dominguez* is distinguishable from the present case because nowhere in the opinion does it state that the doctor communicated that the father was the one who committed the sexual abuse. We disagree. It can be concluded from the facts recited in *Dominguez,* even clearer than in the present case, that the doctor was suggesting the father was the source of sexual abuse, since the father alleged that the doctor's conclusions were the basis for criminal investigations against him. Nevertheless, even if it was not clear, it does not change the reasoning of *Domin-*

*guez,* namely that a doctor is only liable for negligence where there is a breach in the physician-patient relationship. *Id.* Without some type of contractual physician-patient relationship, no duty is owed. *Id.*

Appellant argues that one Texas court did find a doctor liable outside the physician-patient contractual relationship and cites *Armstrong v. Morgan,* 545 S.W.2d 45 (Tex.Civ.App.—Texarkana 1976, no writ). In *Armstrong,* Armstrong's employer, Zale Corporation, employed a company doctor. When Armstrong was promoted in the company, Zale requested that Armstrong have a physical examination by the company doctor who would report back the results. The doctor's results were that appellant was in bad physical condition and as a result, Armstrong was fired. Armstrong sued the doctor. The court concluded that although there was no direct contractual relationship between Armstrong and the company doctor, the doctor still owed a duty not to give an inaccurate report of appellant's health that might injure him. In that case, the duty existed because Armstrong was directly examined by the doctor and the doctor had a duty not to injure Armstrong physically or otherwise. *Armstrong* is distinguishable from the present case, because appellant was never examined by appellees and never established a doctor-patient relationship.

Appellant further argues that, although no Texas case has found duty in this type situation, duty can be found based on the factors announced in *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983). *Clark* concerned whether the employer owed a duty to victims killed in an automobile collision involving an employee sent home when the employer knew the employee was intoxicated. The court announced the following factors which should be considered in determining whether the law should impose a duty:

> the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer.

*Id.* The court went on to discuss the importance of imposing a duty upon an employer to act reasonably when he exercises control over his servants in light of the changing social standards and increasing complexities in today's society. *Id.*

Appellant argues that when the factors announced in *Clark* are applied to the present case it is clear that a duty exists. Appellant urges that the risk, foreseeability and likelihood of great harm was a logical result of appellees' communication of its repugnant diagnosis to Greta and the court appointed professionals. Appellant goes on to argue how important all courts perceive protection of family relationships, and that Texas allows recovery for injuries to the family relationship. *Reagan v. Vaughn,* 804 S.W.2d 463 (Tex.1990) (reh'g granted in part, reh'g denied in part) (allowed child recovery for loss of parental consortium when third party caused serious injury to child's parent); *Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983) (allowed in wrongful death suits).

We agree with appellant that the harm to a family relationship and mental anguish are foreseeable results of a mental health professional's opinion that he may be the culprit of a repugnant sexual crime. Nevertheless, what appellant fails to do in analyzing the factors in *Clark* is to balance the factors of risk, foreseeability and likelihood of harm against the social utility of the mental health professional's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the mental health professional. As noted in *Clark,* it is important to look at the changing social standards and complexities in today's society. Public awareness of the crime of sexual abuse by parents against their children is growing. Colaneri and Robinson, *Coverage for Parents' Sexual Abuse,* 34 For The Defense 2 (March 1992). The Texas legislature has made major steps to insure that reporting of sexual abuse is made for the protection of children. Tex.Fam.Code Ann. § 34.01–08 (Vernon 1986). As a result, there are several considerations necessary to be weighed against claimants' right to sue mental health professionals who make

opinions regarding sexual abuse. Those factors include, society's growing awareness and concern over child sexual abuse, the inability of small children to easily communicate such abuse, the protection of children from abuse, the need for health professionals to make such evaluations without fear that their opinions may subject them to civil liability, the need for parents who suspect that their child is being abused by the other parent to be given a medical evaluation of the child, and the need for courts concerned with the best interest of the child to know all opinions regarding the possibility that the child has been sexually abused by either parent. We further note that the Texas legislature has made it a class B misdemeanor for a person (including a parent) to knowingly or intentionally make a report of child abuse pursuant to chapter 34 of the Family Code if that person knows it lacks factual foundation. TEX.FAM.CODE ANN. § 34.031 (Vernon Supp. 1992) (effective September 1, 1987). There is also provision, effective September 1, 1991, for persons reporting child abuse to receive attorney's fees and other expenses related to their defense when a claim is brought against them because they are immune from liability under section 34.03. *Id.* sec. 34.032.

■ As to appellant's claim that appellees should be subject to liability for stating their opinion regarding sexual abuse to health care professionals hired by the court in determining the best interest of the child, we think that there is clearly no duty in this instance. First, it is uncontroverted that DeAlmeida made a report pursuant to chapter 34 of the Family Code once he suspected child abuse. Section 34.03 states that a person who reports abuse is immune from liability in *any* judicial proceeding resulting from the report. TEX.FAM.CODE ANN. § 34.03 (Vernon Supp.1992) (emphasis added). Certainly, if the court health professionals were told by appellant about his findings after making his report, it could be argued that it was a communication made in a judicial proceeding resulting from the report. Further, section 34.02 requires that the report of child abuse shall be made "to any local or state law enforce-

ment agency, ... in addition to the Texas Department of Human Services or *the agency designated by the court to be responsible for the protection of children."* The court appointed personnel involved in the best interest of Britta were an agency designated by the court, responsible for Britta's protection. Nevertheless, even if immunity of Chapter 34 were not involved here, there can be no duty to appellant in appellees giving their opinion to court appointed health professionals under the *Clark* factors. Appellees had a duty to Britta. That duty outweighs any risk of harm that might otherwise be attributed to appellant as a result of their giving an opinion, even if that opinion was erroneous.

As to appellant's claim that appellees communication to Britta's mother gave rise to a duty to appellant, we also disagree. In weighing the *Clark* factors again, it is not difficult to see how the social utility of protection of children from child abuse could be undermined in providing a duty to exist in this instance. Accordingly, since no duty in the circumstances alleged in appellant's petition are supported by Texas law, appellant's claims for negligence fall. Points of error one through three are overruled.

The summary judgment of the trial court is affirmed.