Gage VAN HORN, M.D., Petitioner,

v.

Wallace Lee CHAMBERS, Annie Mae Chambers, and Edward Johnson, Respondents.

No. 97–0630.

Supreme Court of Texas.

Argued Jan. 8, 1998.

Decided July 3, 1998.

Rehearing Overruled July 3, 1998.

Terry O. Tottenham, Austin, Renee A. Forinash, San Antonio, Dean A. Schaffer, Austin, for Petitioner.

Gayle E. Oler, Dallas, Winfred H. Morgan, Michael Phillips, Evelyn T. Ailts, Ray L. Shackelford, Houston, for Respondents.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH, SPECTOR, OWEN, BAKER and HANKINSON, Justices, joined.

The motion for rehearing is overruled. Our opinion of May 8, 1998, is withdrawn and the following is substituted in its place.

The issue in this case is what duty a physician owes to third parties outside the physician-patient relationship. Two hospital employees were killed and a fellow employee injured while trying to subdue a violent patient. The episode occurred after an attending physician transferred the patient from the neurological critical care unit to a private room on an unsecured general floor. The injured employee and the parents of one of the deceased employees sued the physician for negligence and gross negligence in causing the bodily injuries and wrongful death. The trial court granted summary judgment for the physician. The court of appeals reversed. *Chambers v. Hermann Hosp. Estate*, 961 S.W.2d 177 (Tex.App.–Houston [1st Dist.]1996) . We reverse the court of appeals' judgment and render judgment that the plaintiffs take nothing.

I

In April 1991, Johnny Long, Jr., was taken to the Hermann Hospital emergency room and was admitted for treatment of seizures and alcohol withdrawal. Long was combative on arrival. Emergency room personnel sedated him, administered anti-seizure and other medications, and secured him with leather restraints. The next day, Long was transferred to the hospital's neurological critical care unit ("NCCU"), where neurologist Dr. Gage Van Horn was the attending physician. On Long's second day in the NCCU, Van Horn determined that Long no longer required critical care and transferred him to a private room. After Van Horn finished his duties in the NCCU on that day, he had no further contact with Long until after the incident that is the basis of this suit.

That incident occurred the day after Long was transferred to his private room, when Long decided that he wanted to leave the hospital. Hospital personnel confronted Long to prevent him from leaving. After Long fled into the hallway, hospital food service worker Edward Johnson, patient care technician Ronald Chambers, and medical student Richard Larramore tried to stop him. During a struggle, all four men

crashed through a large louvered grill covering an open air shaft and fell twenty-four feet to a concrete floor. Chambers and Larramore died; Long and Johnson were injured.

Johnson and Chambers' parents, Wallace Lee and Annie Mae Chambers, sued Van Horn for Johnson's injuries and Chambers' wrongful death, alleging negligence and gross negligence. The claims against Van Horn from the plaintiffs' petition are that he:

1) failed to properly diagnose Long's condition;

2) failed to select, prescribe, and oversee the proper treatment for Long's condition;

3) ordered and/or failed to prevent Long's transfer to an unsecured floor, which had inadequate facilities to treat Long's violent and disruptive behavior;

4) failed to see that Long was transferred to a proper facility to handle his violent and disruptive behavior;

5) permitted Long to remain on an unsecured floor after he exhibited signs that he would erupt into violent and disruptive behavior; and

6) failed to order mandatory physical restraints to be placed on Long while on the unsecured floor.

Van Horn moved for summary judgment, asserting that he owed no duty to the plaintiffs, did not breach any duty if he did owe one, and did not proximately cause the plaintiffs' injuries. The trial court granted Van Horn's motion for summary judgment without specifying the grounds. The court of appeals reversed, holding that Van Horn owed a duty to non-patient third parties based on this Court's decision in *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983). 961 S.W.2d at 188–89. The court of appeals determined that a fact issue existed concerning whether Van Horn had taken control over the patient and then failed to reasonably exercise that control. *Id.* at 189. Three justices dissented to the court of appeals' overruling of the motion for rehearing and motion for rehearing en banc. *Id.* at 193–97.

II

A negligence cause of action has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998). The existence of a duty is a threshold question of law. *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex.1994). The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed. *See St. John*, 901 S.W.2d at 424; *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex.1993). The Chamberses and Johnson seek to impose a duty of reasonable care on Van Horn toward third parties stemming from his medical treatment of his patient, Long. It is undisputed that no physician-patient relationship existed between Van Horn and the injured parties in this suit.

This Court has dealt with analogous situations before. In *Bird*, we determined whether a mental health professional owes a duty to a patient's parent not to misdiagnose negligently a condition of his child. *Bird*, 868 S.W.2d at 769. The case involved a psychologist who determined that a child had been sexually abused by her father. The father sued the psychologist for negligence in diagnosing the child's condition. *Id.* at 768. In concluding that no duty was owed, we conducted the balancing test as set out in *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). *Bird*, 868 S.W.2d at 769–70. That test dictates that we consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the actor. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Our analysis of those factors led us to hold that a mental health professional owes no professional duty of care to a third party not to misdiagnose the condition of a patient. *Bird*, 868 S.W.2d at 770.

In reaching that conclusion, we noted that the father in *Bird* did not have the requisite physician-patient relationship with the defendant or the defendant's employer as a basis for imposing a duty. *Id.* We analyzed courts

of appeals' decisions that dealt with similar situations and also found no duty. *Id.* at 769–70 (discussing *Vineyard v. Kraft*, 828 S.W.2d 248 (Tex.App.—Houston [14 th Dist.] 1992, writ denied), and *Dominguez v. Kelly*, 786 S.W.2d 749 (Tex.App.—El Paso 1990, writ denied)). In *Vineyard*, a psychiatrist and psychotherapist who had examined a child made a diagnosis implicating a parent in child abuse. *Vineyard*, 828 S.W.2d at 250–51. The parent sued, claiming negligent misdiagnosis and negligent infliction of emotional harm. The *Vineyard* court held, "Without some type of contractual physician-patient relationship, no duty is owed." *Id.* at 253 (citing *Dominguez*, 786 S.W.2d at 751).

Since our decision in *Bird*, this Court has twice dealt with a husband's claim that his wife's physician owed him a duty during pre-natal care. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79–81 (Tex.1997); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex.1995). In *Krishnan*, a husband alleged mental anguish damages suffered as a result of his wife's injury that was proximately caused by, among other things, her doctor's negligent diagnosis of her condition. *Krishnan*, 916 S.W.2d at 479. Citing *Bird*, the Court held that the doctor owed no duty to the husband, because such a duty arises out of the doctor-patient relationship. *Id.* at 482. In *Trevino*, Oscar Trevio claimed mental anguish damages after witnessing a physician's alleged negligent treatment of his wife. *Trevino*, 941 S.W.2d at 79. The Court relied on *Krishnan* and reiterated its holding: that the hospital owed no legal duty to a third party to provide competent medical care to the third party's wife or unborn child. *Trevino*, 941 S.W.2d at 79 (citing *Krishnan*, 916 S.W.2d at 482); *see also Cathey v. Booth*, 900 S.W.2d 339, 342 (Tex.1995) (per curiam).

The issue before us, as in *Krishnan*, is also squarely controlled by *Bird*. The basis of all the claims against Van Horn is his medical diagnosis of Long's condition, which dictated the treatment Long should receive. In the Plaintiffs' Response to Van Horn's Second Motion for Summary Judgment, the plaintiffs note that a different doctor in the emergency room diagnosed Long as having "Seizure Disorder," with a secondary diagnosis of "Al-cohol Withdrawal." The plaintiffs' petition specifically alleged that once Van Horn became Long's attending physician, Van Horn failed to properly diagnose Long's condition, and in turn failed to select, prescribe, and oversee the proper treatment needed for the condition. All other claims are based on Van Horn's decision to transfer Long to an unsecured room and to discontinue physical restraints, which also directly resulted from the doctor's alleged misdiagnosis of Long's condition.

▪ The gravamen of the plaintiffs' complaints is that Van Horn knew or should have known that Long posed a danger to others and should have treated him accordingly. However, Van Horn could only make the proper decisions based on Long's condition by utilizing his knowledge as a medical doctor, and applying that knowledge to Long's symptoms. If Van Horn's medical knowledge was adequate, and he properly applied it to Long's situation through his diagnosis and corresponding treatment, the doctor may have had no basis for continuing physical restraint or critical care. On the other hand, if Van Horn acted on inadequate medical knowledge or improperly applied it to Long's situation, the doctor may have had a basis for continuing physical restraint or critical care. A failure to do so could amount to medical negligence, but only against one to whom a duty is owed. *See Scott v. Uljanov*, 74 N.Y.2d 673, 543 N.Y.S.2d 369, 541 N.E.2d 398, 399 (1989) (holding that allegations challenging a hospital's assessment of intoxicated patient's supervisory and treatment needs sounded in medical negligence because the conduct at issue constituted an integral part of rendering medical treatment).

In short, this is ultimately a case of injured parties other than the patient claiming that a doctor negligently misdiagnosed, and in turn negligently treated, a patient's condition. Any duty of reasonable care on Dr. Van Horn's part to avoid such negligence originates solely through the relationship with, and flows only to, his patient. *Cf. Praesel*, 967 S.W.2d at 396 (observing that this Court has generally limited the scope of the duty owed by physicians in providing medical care).

### III

Plaintiffs urge that this case is one of negligently exercised control over another, and thus we should follow *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1984), and not *Bird*. We have never extended *Otis Engineering* beyond the employer-employee context. *See Crider v. United States*, 885 F.2d 294, 299 (5th Cir.1989) (concluding that *Otis Engineering* seems to create a unique species of liability premised on the employer-employee relation, and noting that no Texas court has expanded it beyond that context), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). We decline to do so in this case. The right to control implicit in the master-servant relationship distinguishes *Otis Engineering* from the case before us, making it an inappropriate basis for extending a physician's duty of care to third parties.

The court of appeals in *Kehler v. Eudaly*, 933 S.W.2d 321 (Tex.App.—Fort Worth 1996, writ denied), likewise refused to extend *Otis Engineering* to the physician-patient context. In *Kehler*, the family of two murdered individuals sued the doctors and hospital who treated the would-be murderer for depression and "schizoaffective" disorder prior to the killings. *Kehler*, 933 S.W.2d at 323–24. Among the many reasons the court found no duty to the third-party family members for their own damages was the inapplicability of *Otis Engineering* to a situation outside an employer-employee relationship. *Id.* at 332. The court properly recognized that there was no relationship between the doctors and the patient that provided the type of control possessed by employer Otis over its employee Matheson. *Id.; see also First Interstate Bank v. S.B.F.I., Inc.*, 830 S.W.2d 239, 244 (Tex.App.—Dallas 1992, no writ) (declining to extend *Otis Engineering* to a case outside the employer-employee context).

The plaintiffs cite to the dissenting opinion in *Kerrville State Hospital v. Clark*, 923 S.W.2d 582, 588–89 (Tex.1996) (Abbott, J., dissenting), a case in which a mental patient killed his wife while he was undergoing out-patient treatment by the hospital. *Id.* at 583. The dissenting Justices would have found a duty to third parties on the hospital's part "because KSH had control over [the patient]

and knew or reasonably should have known that he posed a serious danger to a readily identifiable person or class of persons." *Id.* at 588. The dissent's position did not, of course, prevail, but even under the dissent's view, the case before us is distinguishable.

*Kerrville State Hospital* involved a court-ordered out-patient commitment. *Id.* A designated hospital social worker had the responsibility of overseeing the patient's care, periodically examining the patient to monitor his compliance with court-ordered drug treatment, and informing the court if the patient failed to comply with the treatment. *Id.* These elements of the hospital's court-ordered control led the dissenting Justices to conclude that KSH was in "charge" of the patient. *Id.* Even if the dissent were correct, the elements on which it relied are absent in this case. Therefore, plaintiffs' reliance on the dissent in *Kerrville State Hospital* is misplaced.

Plaintiffs also assert that the Restatement (Second) of Torts sections 315 and 319 provide a basis for a duty to third parties on a physician's part. Reliance on these is also misplaced. First, section 315 states:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

RESTATEMENT (SECOND) OF TORTS § 315 (1965). This Court has recognized in the past that the necessary special relationship for imposing a duty to control may exist between a parent and child, master and servant, or independent contractor and contractee under special circumstances. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). No Texas court has held that the physician-patient relationship is such a relationship.

Furthermore, by the language of section 315(a), the relationship itself must "impose[ ] a duty upon the actor to control the third

person's conduct." Aside from the fact that a physician-patient relationship is not "special" so as to impose a duty to control, as we have discussed, there is nothing inherent in the relationship that gives a doctor the right to control his patient. *See Boulanger v. Pol,* 258 Kan. 289, 900 P.2d 823, 834 (1995) (finding no special relationship between psychiatrist and voluntary mental patient to warrant imposing duty on psychiatrist to involuntarily commit patient, when patient was free to terminate the physician-patient relationship and leave facility); *Nasser v. Parker,* 249 Va. 172, 455 S.E.2d 502, 506 (1995) (finding neither physician-patient nor hospital-patient relationship sufficient to establish "special relation" that would trigger duty concerning patient's conduct).

As for section 315(b), a special relationship must exist between the actor (Van Horn) and another "which gives to the other a right to protection." In this case, the "other" persons whom Dr. Van Horn allegedly had a duty to protect were the hospital workers who tried to restrain Long. However, the record does not reflect that Van Horn ever had any contact whatsoever with these hospital workers, much less the necessary special relationship in order to impose upon the doctor a duty to protect these individuals. Accordingly, section 315(b) also does not apply.

Section 319 of the Restatement (Second) of Torts states:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

RESTATEMENT (SECOND) OF TORTS § 319 (1965). We have not adopted section 319 as the law in Texas. *See Crider,* 885 F.2d at 300. In *Otis Engineering,* we cited section 319 for the proposition that a duty to third parties may exist in "cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons." *Otis Eng'g Corp.,* 668 S.W.2d at 311. However, we reiterate that the context in which we cited section 319 in *Otis Engineering* involves the inherent con-

trol of a master over its servant. Therefore, section 319 as it was applied in *Otis Engineering* does not apply to a case where there exists no inherent right to control another, such as in a physician-patient relationship. For these reasons, we reverse the court of appeals' judgment and render judgment that the Chamberses and Johnson take nothing in their claims against Dr. Van Horn.

ABBOTT, J., did not participate in the decision.