In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00306-CV
_____

**J.W. GARRETT & SONS, INC. D/B/A G&G ENTERPRISES, INC.,**
**Appellant**

**V.**

**WYATT D. SNIDER, JACK KOCH, AND JOHN THOMASSON,**
**Appellees**

---

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-187,307**

---

**MEMORANDUM OPINION**

In this appeal, we consider whether the trial court properly granted a take-nothing summary judgment on a builder's claims alleging negligence, fraud, misrepresentation, theft of services, and misapplication of trust funds against three board members of the Young Men's Christian Association of Beaumont, Texas (BYMCA). The claims of the builder, J.W. Garrett & Sons, Inc. (G&G), arose after

the BYMCA defaulted on its obligation to make progress payments toward completing a new building, which was intended to be the BYMCA's principal location. In four issues, G&G argues that the final judgment should be reversed, and that its claims should be remanded for trial. We conclude the issues that G&G raises in the appeal do not require the judgment to be reversed, and the trial court's judgment is affirmed.

## Background

The background facts are provided in light of the summary judgment standard of review, which requires that we view the summary judgment evidence in the light most favorable to G&G as the party that opposed the motion for summary judgment. *See Henkel v. Norman*, 441 S.W.3d 249, 250 (Tex. 2014). In 2008, the BYMCA hired G&G on a cost-not-to-exceed basis to manage the construction of a new facility to house the BYMCA. At a meeting in January 2009, prior to the date that G&G agreed to manage the project, Wyatt D. Snider told G&G's president, Colin Garrett, that "the [BYMCA] had designated $4,500,000.00 to complete the project." When the meeting occurred, Snider was a member of the BYMCA's board, and in 2009, he became the board's chair. Jack Koch, the BYMCA's Chief Executive Officer, was present during the meeting.

At another meeting in February 2009, Garrett presented G&G's suggestions that were designed to reduce the cost of completing the proposed project to Koch and John Thomasson, who was at the time the meeting occurred serving as the BYMCA's chair. During this meeting, G&G agreed to reduce various costs for the proposed project, reducing the maximum projected cost to build the facility to $4,008,862.

Between February 2009 and February 2010, G&G performed a substantial amount of work to construct the facility, but on February 11, 2010, Snider informed G&G that the BYMCA did not have sufficient funds to complete the project. When G&G sued the defendants, G&G had been paid $3,229,755 for its work on the project; G&G claimed that the BYMCA owed an additional $728,325 for the work that had been completed. In addition to its claims for unpaid work, G&G claimed in its suit that it would have earned an additional $437,410 under its contract with the BYMCA had the project been completed.

According to an affidavit that Garrett filed to oppose the motion for summary judgment, G&G would not have started the job had Garrett known that the BYMCA "did not have the money to complete the construction, or that a capital campaign or fundraising campaign would be required to raise the money to complete the construction." According to Garrett's affidavit, G&G acted

3

reasonably in relying on Snider's statement that the BYMCA had designated $4,500,000 to pay for the project, and he asserted that in deciding whether to agree to the BYMCA's proposal that G&G build the new facility, G&G relied on Snider's statements. In his affidavit, Garrett stated that before Snider told him to stop work, "I was not aware of how the [BYMCA] had arranged to pay for the construction."

In July 2010, G&G sued the BYMCA, Snider, Koch, and Thomasson on claims that relate to the BYMCA's failure to fully pay for the work G&G completed and the profit it would have earned if the project had been completed. While G&G later voluntarily dismissed BYMCA[1] from the suit, it did not dismiss its claims against Snider, Koch, and Thomasson. In its First Amended Petition, its

---

[1] In May 2013, Snider, Koch, and Thomasson filed a motion for partial summary judgment on all of G&G's claims against them, but the BYMCA never filed a motion seeking summary judgment on G&G's claims against it. Therefore, because the motion did not dispose of all of the issues in the case against all parties, the trial court's June 2013 order granting summary judgment was interlocutory. Tex. R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."). In June 2014, G&G filed a motion to dismiss the claims that it was pursuing against the BYMCA without prejudice; its motion was granted on June 4, 2014. Subsequently, G&G filed a motion for new trial, followed by a timely-filed notice of appeal. *See* Tex. R. App. P. 26.1 (providing that a party must file a notice of appeal within 90 days of the date a judgment becomes final if any party timely files a motion for new trial). The dismissal made the June 2013 order operate as a final judgment, effective as of the day the trial court dismissed G&G's claims against the BYMCA.

live pleading for the purpose of our review, G&G claimed that Snider, Koch, and Thomasson were liable to it for misusing construction trust funds under chapter 162 of the Texas Property Code, alleged they were negligent, that they committed fraud, and that they had stolen G&G's services in violation of chapter 134 of the Texas Civil Practice and Remedies Code and section 31.04 of the Texas Penal Code. *See* Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, sec. 162.001(a), (b), 1983 Tex. Gen. Laws 3269, 3720-721, Act of May 28, 1997, 75th Leg., R.S., ch. 1018, § 1, sec. 162.001(c), 1997 Tex. Gen. Laws 3721, 3721 (amended 2009) (current version at Tex. Prop. Code Ann. § 162.001 (West 2014)), Tex. Prop. Code Ann. §§ 162.002-.033 (West 2014); Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (West 2011 & Supp. 2014); Tex. Penal Code Ann. § 31.04 (West Supp. 2014).[2]

On May 17, 2013, Snider, Koch, and Thomasson filed their traditional motion for summary judgment. In the motion, they asked the trial court to enter a take-nothing judgment on G&G's four claims. The motion is supported by Snider's affidavit; the parties' contract (signed by Koch, for the BYMCA, and Garrett, for

---

[2] For purposes of this appeal, we cite to the current version of this statute, as the statute's subsequent amendment is not relevant to the issues raised on appeal.

5

G&G); and a copy of G&G's unsecured proof of claim, which G&G filed in connection with the BYMCA's Chapter 7 bankruptcy.[3]

G&G filed a response, which includes Garrett's affidavit, copies of several electronic messages between Garrett and Snider about the proposed project, copies of G&G's proposed and approved bids, the BYMCA's notice to proceed from the BYMCA's architect to G&G, excerpts from the depositions of Snider and Don Grimes, a loan officer in charge of the loan the BYMCA obtained for the project, and various exhibits from the depositions taken during the discovery phase of the case. In reply to G&G's summary judgment response, Snider, Koch, and Thomasson moved to strike four of the twelve paragraphs contained in Garrett's affidavit.

In June 2013, the trial court granted Snider, Koch, and Thomasson's motion for partial summary judgment. The trial court also granted Snider, Koch, and Thomasson's motion to strike, and ruled that it would not consider the four paragraphs in Garrett's affidavit to which Snider, Koch, and Thomasson objected

---

[3] We are unable to determine the date that the BYMCA declared bankruptcy from the record before us. However, the record includes Garrett's affidavit of May 2013, in which he indicates that G&G received a payment from BYMCA's bankruptcy trustee, and he states the payment reduced the balance that the BYMCA owed G&G. Garrett indicates that after crediting BYMCA for the payment by the trustee, $381,675 remains unpaid on the work that G&G performed before it stopped working on the project.

on the basis that the paragraphs did not constitute proper summary judgment evidence.

G&G raises four issues in its appeal. In issue one, G&G argues that the summary judgment evidence raises fact issues on each of the elements of its four claims. In issue two, G&G argues the trial court erred by striking the four paragraphs in Garrett's affidavit that were the subject of Snider, Koch, and Thomasson's motion to strike. In issue three, G&G argues that the trial court erred by refusing to consider other paragraphs in Garrett's affidavit that were not the subject of Snider, Koch, and Thomasson's motion to strike. In issue four, G&G argues that because Snider, Koch, and Thomasson's motion for summary judgment was filed after the March 2013 deadline established in the docket control order for dispositive motions, the trial court erred by ruling on the motion for summary judgment.

Standard of Review

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the summary judgment proceedings in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and we

7

disregard contrary evidence unless reasonable jurors could not. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the summary judgment evidence, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See City of Keller*, 168 S.W.3d at 824; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

The party that files a traditional motion for summary judgment has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Generally, a defendant is required to conclusively negate at least one essential element of each of the plaintiff's causes of action or to conclusively establish each element of an affirmative defense to succeed on a traditional motion for summary judgment. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions . . . ." *City of Keller*, 168 S.W.3d at 816. Once the party moving for summary judgment has established its right to summary judgment as a matter of law, the party opposing the motion must present evidence that raises a genuine issue of material fact on the elements of the claims that are challenged to avoid the motion being granted. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d

8

671, 678-79 (Tex. 1979). "A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010) (citing *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)).

Consideration of Motion filed after the Docket Control Deadline

First, we address the complaint that G&G raises in its fourth issue, which concerns whether the trial court could properly consider a motion filed after the deadline established for the filing of all dispositive motions. The record in the case reflects that in November 2012, the trial court signed a docket control order. The docket control order required that all dispositive motions be filed by March 8, 2013. The record also reflects that Snider, Koch, and Thomasson's motion for partial summary judgment was filed on May 17, 2013, more than two months after the deadline for such motions. The docket control order set the case for trial on April 8, 2013, and it states that the deadlines established by the docket control order "shall remain in effect even though the case is not tried as scheduled above." While the case was not tried in April, the record does not indicate that the trial court ever formally amended the docket control order.

9

In their motion for summary judgment, Snider, Koch, and Thomasson did not request that the trial court alter the docket control order's deadlines. However, before the trial court acted on the motion, G&G failed to timely object to the trial court's consideration of the motion based on the fact that the motion was filed after the deadline established in the docket control order.[4] *See* Tex. R. Civ. P. 166a(c) (explaining that without leave of the court, an adverse party must file any response not later than seven days prior to a hearing).

Rule 166 of the Texas Rules of Civil Procedure allows a trial court to create various deadlines to control the disposition of the various phases of a case, and provides that "such order . . . shall control the subsequent course of action[.]" Tex. R. Civ. P. 166(p). Using Rule 166, trial courts are to dispose of cases "without undue expense or burden[,]" and courts may modify orders "to prevent manifest injustice." *Id.*; *Trevino v. Trevino*, 64 S.W.3d 166, 170 (Tex. App.—San Antonio 2001, no pet.). A court may modify a docket control order in many ways, and it may do so implicitly by setting a hearing after a deadline. *See Trevino*, 64 S.W.3d

---

[4] The docket sheet indicates that the trial court conducted a hearing on Snider, Koch, and Thomasson's motion on May 31, 2013. On the morning of June 6, 2013—the day the trial court granted the motion—G&G filed a supplemental response to the motion; in the supplemental response, G&G objected to the trial court considering the motion based on the fact that it was filed after the deadline the trial court established for filing all dispositive motions. Nevertheless, the record does not show that G&G secured a ruling on the objection that it raised for the first time in its supplemental response.

at 170; *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 262 (Tex. App.—Corpus Christi 1994, writ denied). Here, by hearing and ruling on Snider, Koch, and Thomasson's motion, the trial court implicitly modified the docket control order. G&G did not request a continuance of the hearing, and it has not complained that it was otherwise prejudiced by Snider, Koch, and Thomasson's failure to comply with the docket control order's deadlines.

In our opinion, G&G's objection that the trial court should not consider the motion because it was not filed before the docket control deadline date was not properly preserved for appeal. Tex. R. App. P. 33.1(1)(A), (2)(A). The objection was not timely, and G&G never secured the trial court's ruling on the objection that it raised in its supplemental response. *Id*. Nevertheless, even had G&G's objection been timely and its right to complain about the violation of the docket deadline been preserved, the docket control order was an interlocutory order that the trial court could modify. *See* Tex. R. Civ. P. 306a. We overrule G&G's fourth issue.

Fact Issues on All Elements of Each Claim

In issue one, G&G argues that the summary judgment evidence raises fact issues on each of the elements of its four claims. According to G&G, had the trial court not granted the motion to strike portions of Garrett's affidavit, the trial court

11

would have been faced with a record that contained some evidence on each of the elements of its claims. However, in its brief, G&G does not point out the elements of its claims, nor does it point to the specific evidence in the summary judgment record that supports each of the elements of its four claims. Instead, G&G argues globally, claiming that the summary judgment record contains evidence creating a fact issue on all of the elements of all of its four claims. Additionally, G&G does not identify the elements of its four claims.

We are not required to make G&G's arguments for it, nor are we required to brief the argument on its behalf. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also George v. Houston Eye Assocs.*, No. 14–02–00629–CV, 2003 WL 22232651, at *3 (Tex. App.—Houston [14th Dist.] Sept. 30, 2003, pet. denied) ("It is not the appellate court's responsibility to create the appellant's argument."). In the absence of a concise argument as to each claim, with appropriate citations to authorities, and a succinct, clear, and accurate argument, along with references to the record, G&G has failed to preserve its claim that the trial court erred in granting Snider, Koch, and Thomasson's motion for summary judgment. *See* Tex. R. App. P. 38.1(i).

12

However, even if G&G had properly preserved its right to complain about the trial court's ruling, its arguments are without merit. For purposes of analyzing G&G's first issue, we will consider all of the paragraphs in Garrett's affidavit and all of the summary judgment evidence that was before the trial court, including the entirety of Garrett's affidavit.

G&G asserted four claims against Snider, Koch, and Thomasson, claiming Texas Trust Fund Act violations, fraud, negligence, and theft, all of which are related to the BYMCA's failure to pay G&G for its work. With respect to G&G's misuse of trust funds claim, chapter 162 of the Property Code provides that a "trustee" who intentionally, knowingly, or with the intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations misapplies trust funds. Tex. Prop. Code Ann. § 162.031(a) (West 2014).[5] A "trustee" includes an officer or director of a contractor who has control or direction of trust funds. *Id.* § 162.002 (West 2014). A contractor who furnishes labor or material for the construction on specific real property is a beneficiary of trust funds. *Id.* § 162.003(a) (West 2014). Trust funds are defined as payments made to a contractor under a construction contract

_____

[5] Unless cited otherwise, we cite the current version of the statutes in chapter 162 of the Texas Property Code, as any amendments that occurred after G&G and the BYMCA signed the contract are not relevant to the issues in G&G's appeal.

for the improvement of real property, as are loan receipts borrowed by an officer or director of an owner for the purpose of improving specific real property, if the loan is secured in whole or part by a lien on the property. Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, sec. 162.001(a), (b), 1983 Tex. Gen. Laws 3269, 3720-721 (current version at Tex. Prop. Code Ann. § 162.001(a), (b) (West 2014)).

With respect to the amounts paid to G&G as costs of construction,[6] Garrett stated in his affidavit that G&G submitted applications for payment to the BYMCA's architect, which once approved, were paid. However, Garrett claims that he did not know whether the payments G&G received came from the proceeds of the BYMCA's construction loan.

In this case, the summary judgment evidence conclusively shows that the BYMCA was loaned $2,000,000 and that G&G received payments on BYMCA's project that totaled $3,229,755. The summary judgment evidence does not show that any of the loan proceeds were used for purposes other than to pay for the construction of the new facility, and G&G points to no summary judgment

_____

[6] We note that G&G could not maintain a Trust Fund Act claim with respect to the percentage that it earned as a contractor fee, which was based on the material and labor spent on the project. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1018, § 1, sec. 162.001(c), 1997 Tex. Gen. Laws 3721, 3721 (amended 2009) (current version at Tex. Prop. Code Ann. § 162.001(c) (West 2014)) (providing that where the contract provides the owner will pay the costs of construction and a reasonable fee, the "fee payable to the contractor is not considered trust funds").

evidence showing the loan proceeds were used for any other purpose. We conclude that G&G's summary judgment evidence fails to raise a fact issue proving that the construction loan proceeds were misdirected for purposes other than constructing the BYMCA's new facility. There is also no evidence in the record showing that Snider, Koch, or Thomasson acted knowingly, intentionally or with the intent to defraud with respect to the BYMCA's use of the loan proceeds, as the loan proceeds appear to have been used to pay for the BYMCA's new building.

Concerning G&G's fraud claim, G&G was required to prove that Snider, Koch, or Thomasson (1) made a material representation that was false, (2) knew the representation was false, (3) intended to induce G&G to act upon the representation, and that (4) G&G acted in reliance on the representation and thereby suffered injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). In contract cases, a promise of future performance is actionable in fraud only if the defendant, at the time he made the promise, made it with no intention that the promise would be performed. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). In other words, "the mere failure to perform a contract is not evidence of fraud." *Id.*

G&G's complaints involve Snider's representations to Garrett "that the YMCA had designated $4,500,000 to complete the project" and "that there would be sufficient funds to pay G&G for its work." Garrett claims these statements were material and false, and that they induced him to sign the contract.

In our opinion, the two statements are not statements regarding existing facts. Snider's statement that the BYMCA had "designated" funds for the project is not tantamount to a statement that the BYMCA had funds on hand that were segregated for use solely on the new building. Instead, Snider's statements reflect the amount that the BYMCA had budgeted for the project. Snider's statements about the BYMCA having designated funds cannot reasonably be interpreted as meaning that the BYMCA placed any funds into a trust for G&G's benefit. Snider's statement that there would be sufficient funds to pay G&G for its work is a statement predicting the BYMCA's future solvency, which is a matter of opinion, not fact. Statements predicting what will occur in the future are not statements of fact, and as such, these types of statements cannot serve as evidence of fraud. *See Italian Cowboy Partners*, 341 S.W.3d at 337-38. We conclude that G&G has not demonstrated in its appeal that a fact issue exists on its claims for fraud.

Snider's statements are also the basis of G&G's fraud claims against Koch and Thomasson. According to G&G, Koch and Thomasson never advised it that

16

Snider's statements were false. However, in the absence of a duty to disclose, a failure to disclose generally cannot serve as evidence of fraud. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). In its brief, G&G fails to explain how Koch and Thomasson owed it a duty to correct any of Snider's statements, nor has G&G explained in its brief how Snider's statements could otherwise form the basis of its claims against Koch and Thomasson.

With respect to G&G's negligence claim, G&G was required to prove that Snider, Koch, and Thomasson, respectively, owed it a legal duty, that each of them, respectively, had breached that duty, and that their breaches caused G&G to be damaged. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Whether a duty exists—a threshold question in a negligence case—is a question of law. *Tri v. J.T.T.*, 162 S.W.3d 552, 563 & f.25 (Tex. 2005); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). "The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

In this case, it is undisputed that G&G contracted with the BYMCA and that it had no contract with Snider, Koch, or Thomasson. In its brief, G&G fails to explain how Snider, Koch, and Thomasson owed it duties that were separate from those owed to it by the BYMCA, the party with whom it contracted. The trial court

17

properly granted the motion on the negligence claim because G&G failed to demonstrate that an issue of material fact existed to prove that Snider, Koch, and Thomasson, respectively, breached any duties they owed in their individual capacities to G&G.

Last, we turn to G&G's claims alleging theft, which are based on section 31.04 of the Texas Penal Code and chapter 134 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005; Tex. Penal Code Ann. § 31.04. With respect to these claims, the evidence in the summary judgment record does not raise an issue of material fact to show that G&G's services were obtained by Snider, Koch, and Thomasson with the intent to avoid payment. Tex. Penal Code Ann. § 31.04.

The summary judgment evidence conclusively establishes that the BYMCA paid G&G over three millions dollars for G&G's work, including two payments that occurred after the BYMCA recognized that it did not have sufficient funds to complete the new building. When the BYMCA recognized that it would not have sufficient funds, the BYMCA halted G&G's work. Nothing in the summary judgment evidence raises an issue of material fact to show that Snider, Koch, and Thomasson, as officers of the BYMCA, secured G&G's services with the intent to allow the BYMCA to avoid paying for G&G's work. Instead, the record shows that

18

after the BYMCA secured the contract, they worked in their capacity as officers to arrange the BYMCA's affairs so that the organization could pay G&G for its work.

We hold that G&G waived its right to our review of issue one by failing to comply with Rule 38.1 of the Texas Rules of Appellate Procedure. We further hold that even if G&G's issue one arguments were not waived, G&G has not demonstrated, on appeal, that material issues of fact existed as to the elements of its four claims. Issue one is overruled.

In light of our resolution of issue one, we need not resolve issues two and three, both of which concern whether the trial court properly considered all parts of Garrett's affidavit in resolving Snider, Koch, and Thomasson's summary judgment motion. *See* Tex. R. App. P. 47.1. Given our disposition of issues one and four, we affirm the trial court's final take-nothing judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 9, 2014
Opinion Delivered October 1, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.